**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Eileen LOWE, Defendant-Appellant.**

**No. 76–1785.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 29, 1977.

Decided Jan. 20, 1978.

Certiorari Denied March 20, 1978. See 98 S.Ct. 1507.

George J. Duckworth, Denver, Colo., for defendant-appellant.

Charles F. Sandoval, Asst. U. S. Atty., Albuquerque, N. M. (Victor R. Ortega, U. S. Atty., Albuquerque, N. M., on brief), for plaintiff-appellee.

Before McWILLIAMS, BARRETT and DOYLE, Circuit Judges.

McWILLIAMS, Circuit Judge.

Eileen Lowe was charged with willfully and knowingly transporting in interstate commerce, from the State of New Mexico to the State of Texas, one John Paul Norris, age one week, who had been unlawfully seized, kidnapped, carried away and held by Eileen Lowe for the purpose of keeping the infant child as her own, in violation of 18 U.S.C. § 1201. The Jury returned a guilty verdict and Lowe now appeals her conviction and sentence. On appeal, she urges the following as grounds for reversal: (1) error by the trial court in denying motions for acquittal or mistrial made during the testimony of an F.B.I. agent concerning his interrogation of the defendant; (2) error by the trial court in permitting, over objection, the mother of the kidnapped child to identify her child, in the presence of the jury; and (3) refusal by the trial court of Lowe's request, made during the Government's presentation of rebuttal testimony, to either change counsel or be permitted to proceed *pro se*. When viewed in context, none of these matters rises to the level of reversible error, and we therefore affirm.

The Government's evidence established that the defendant, age 30, gained entry into the Norris home in Albuquerque, New Mexico, through a ruse and at gunpoint abducted the one week old child of Mr. and Mrs. Edward P. Norris. Both Mrs. Norris and her mother-in-law, who was in the Norris' home at the time of the kidnapping made positive identification of the defendant. After abducting the infant, the defendant took the child by plane from Albuquerque, New Mexico to Lubbock, Texas,

and then by automobile from Lubbock to Lowe's home in Muleshoe, Texas.

A few days after the kidnapping, the authorities in Muleshoe, Texas, became suspicious of the circumstances surrounding Lowe's acquisition of a new-born baby. Investigation by F.B.I. agents eventually culminated in the arrest of Lowe and the return of the child to the Norris family.

The defendant Lowe testified in her own behalf and admitted all of the underlying facts. Her defense was that she had an intense desire to have a baby of her own and was hopeful that if she could have a baby, her current marriage might be salvaged. At one point, the defendant thought she was pregnant, but when this proved to be incorrect, she determined to kidnap somebody else's child. In furtherance of her desire, the defendant testified that she went to Albuquerque and kidnapped the Norris baby.

The defendant's testimony also revealed a tangled marital history and indicated the presence of emotional problems. A psychologist and a psychiatrist were called as defense witnesses, their testimony indicating that the defendant's emotional problems were so severe that at the time of the offense she was unable to distinguish right from wrong and that she was in fact suffering from a form of insanity. The Government called as a rebuttal witness another psychiatrist who testified that, in his opinion, Ms. Lowe was sane, though she admittedly did have emotional problems. It was on this general state of the record that the jury returned a verdict of guilty as charged.

The first ground relied on for reversal is the denial by the trial court of defendant's motions for judgment of acquittal or mistrial. These motions were made during the course of the direct examination of one Frank Haines, an F.B.I. agent. Haines testified that, based on information which he had acquired during the course of his investigation of the kidnapping, he became "suspicious" that Lowe's baby was not really hers and possibly was the Norris baby. He determined that the next step was to speak with Lowe, as he realized he could be mistaken, and that possibly the child was really hers. Accordingly, Haines, another F.B.I. agent, Lowe's minister, and an attorney who was then representing Lowe in a pending divorce proceeding, proceeded to the home in which Lowe was then residing. After identifying themselves, Haines inquired as to whether the baby was actually Lowe's. She stated that it was. Ms. Lowe consented to Haines viewing the baby and his visual observation squared generally with the description of the Norris baby which had been given him. According to Haines, he asked Lowe to accompany him to the local sheriff's office so that he could do some checking and that Lowe voluntarily agreed to do so. In the sheriff's office Lowe reiterated her statement that the child was hers, and stated that it had been delivered at St. Jude's Hospital in Oklahoma City. It was at this point that Haines advised Lowe of her *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After conferring with her lawyer, Lowe changed her earlier statement, and said her child was actually delivered by a midwife in Albuquerque, and not in a hospital in Oklahoma City. After again conferring with her lawyer, Lowe declined to answer any further questions.

The foregoing summary is of testimony given by the witness Haines out of the presence of the jury. It was the position of trial counsel, who does not represent Lowe on appeal, that the *Miranda* warning should have been made *before* Haines did any questioning of Lowe. The trial court did not agree, and was of the view that the questioning by Haines prior to the *Miranda* warning occurred during the investigatory state of the case, and was not custodial questioning. Nonetheless, the trial court, no doubt out of an abundance of caution, ruled that the jury would *not* be allowed to hear any answers given by the defendant to the witness Haines prior to the giving of the *Miranda* warning in the local sheriff's office. It was at this juncture that defense counsel then moved for a judgment of acquittal, or alternatively, a mistrial. The

grounds therefor were never articulated, at least to any real degree, in the trial court, or in this court, for that matter. The trial court denied the motions for acquittal or mistrial, and the jury was returned to the courtroom. Thereafter, Haines was only permitted to testify concerning his questioning of Lowe that occurred *after* the *Miranda* warning. As above indicated, Lowe's answers at that time were that the child was hers and had been delivered by a midwife in Albuquerque.

■ No cogent reason has been advanced in this court as to how the trial court committed error in refusing to direct an acquittal or declare a mistrial. The trial court excluded any testimony concerning questioning which occurred *prior* to the giving of the *Miranda* warning. There is nothing to indicate that any response given by Lowe prior to the *Miranda* warning was in itself a stepping stone to the acquisition of other evidence of any incriminating nature. This is not a fruit of the poisonous tree situation. It is on this basis that we conclude that the trial court did not err in refusing to direct a judgment of acquittal, or declare a mistrial. Under the circumstances there was no reason to do so. Accordingly, we need not here decide whether the *Miranda* warning should have been given by the witness Haines before he did any questioning of the defendant.

■ The second ground for reversal concerns the exhibition at trial of the Norris baby. Cheryl Norris, mother of the kidnapped child, testified in detail as to all aspects of the kidnapping. The prosecuting attorney then asked that the child be brought into the courtroom and identified by the mother, in the presence of the jury, as being her child who had been abducted by the defendant.

The identification of the Norris baby by his mother was relevant evidence. One essential ingredient of the crime charged was that the defendant kidnapped John Paul Norris. The fact that the defendant offered to stipulate does not bind the Government. We recognize that Rule 403, Federal Rules of Evidence, provides that evidence,

even thought relevant, may still be excluded by a trial judge if, in his judgment, the probative value of the relevant evidence is substantially outweighed by the danger of unfair prejudice. However, whether the probative value of proffered evidence is substantially outweighed by the danger of prejudice is a matter resting in the sound discretion of the trial court. *United States v. Shoemaker*, 542 F.2d 561 (10th Cir. 1976); *United States v. Harris*, 534 F.2d 207 (10th Cir. 1975). In the instant case we find no abuse of that discretion.

Moreover, the identification of the child by his mother in the instant case was but a fleeting episode in the total picture. The identification consisted of "yes" answers to only three questions. The baby was then taken from the courtroom. The trial of the case required five days, with the prosecution calling thirty-two witnesses in its case-in-chief, the defendant calling six witnesses of her own, and the prosecution calling seven rebuttal witnesses. Under the circumstances, any possible error would be only harmless error. Even a violation of a constitutional right does not require a reversal if such violation, in the light of the entire record, be harmless beyond a reasonable doubt. *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

■ The last matter relied on for reversal is the refusal of the trial court to permit the defendant, during the latter stages of the trial, to change counsel or proceed *pro se*. This matter arose during the Government's rebuttal case. The defendant apparently did not approve of the manner in which her counsel, the public defender, was cross-examining certain rebuttal witnesses. It was in this setting that the defendant asked the trial court to appoint new counsel. Our examination of the record does not disclose that defendant ever sought to proceed *pro se*, only that she desired a new and different lawyer. The trial court did not err in refusing to allow the defendant to switch counsel in the closing minutes of a five day trial. See *United States v. Calabro*, 467 F.2d 973, 986 (2d Cir. 1972), where it was said that once a trial has begun, a

defendant does not have an unbridled right to reject assigned counsel and demand another.

█ A related matter urged here, though not in the trial court, concerns an incident which occurred sometime prior to trial. The public defender had been appointed to represent the defendant. While this attorney-client relationship was in existence, an attorney, in the jail for the purpose of contacting a client, apparently initiated a conversation with the defendant. The trial judge learned of this, summoned both the public defender and the attorney in question to his chambers, and indicated his displeasure with the attorney's action. In fact, as the result of this incident, disciplinary proceedings were instituted against the attorney. However, the attorney was not precluded from re-contacting the defendant, though the trial judge did lay down certain ground rules in connection therewith. Nothing ever came of this, and the defendant was represented at trial, and ably so, by the public defender. There is the suggestion now that the trial judge by his actions interfered with Lowe's right to retain counsel of her own choosing. Under the circumstances, this suggestion has no merit.

Judgment affirmed.