**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Larry Nash MANGIAMELI, a/k/a Dorian Gray, Defendant-Appellant.**

**No. 80–1556.**

United States Court of Appeals,
Tenth Circuit.

Argued July 14, 1981.

Decided Jan. 25, 1982.

Certiorari Denied April 5, 1982.
See 102 S.Ct. 1776.

David J. Phillips, Asst. Federal Public Defender, Kansas City, Kan. (Leonard D. Munker, Federal Public Defender, Kansas City, Kan., with him on the brief), for defendant-appellant.

Richard J. Marien, U. S. Dept. of Justice, Washington, D. C. (James P. Buchele, U. S. Atty., Kansas City, Kan., with him on the brief), for plaintiff-appellee.

Before DOYLE and McKAY, Circuit Judges, and CHILSON,* District Judge.

McKAY, Circuit Judge.

18 U.S.C. § 2314 (1976) provides that it is an offense against the laws of the United States for anyone, having devised a scheme or artifice to defraud another of $5,000 or more, to induce that person to travel in interstate commerce in execution or concealment of the scheme. 18 U.S.C. § 2 (1976) provides that anyone who "aids, abets, counsels, commands, induces or procures" the commission of such an offense is punishable as a principal.

Appellant Larry Mangiameli was convicted in a jury trial in federal district court on a single count alleging violation of 18 U.S.C. §§ 2 and 2314. On appeal, he requests reversal of his conviction and entry of a judgment of acquittal, or in the alternative, remand for a new trial. In support of this request, he argues insufficiency of the evidence, improper exclusion of admissible evidence, and improper admission of certain character and other evidence.

The uncontroverted evidence at trial established that Mr. Mangiameli was an employee and Associate Director of a New York entity known as Trident Consortium, which offered its services in locating a source to fund a $5.5 million loan for a Kansas farmer. As a commission for its services, Trident required the prospective borrower to pay an advance fee of $110,000, of which $109,000 was refundable in the event that Trident was unsuccessful in arranging the loan. Trident induced the farmer to travel to its New York office where it collected the advance fee. Trident, however, neither located nor apparently ever intended to locate funding for the loan. When the victim demanded the return of the advance fee, Trident stalled him, hoping that he would file bankruptcy, commit suicide, or otherwise simply give up. When instead he persisted in his efforts to secure the return of the advance fee, Trident induced him to travel to New York a second time, where he was issued a check in the amount of $109,000 on a closed account.

This was not an isolated transaction. Trident was engaged nationwide in defrauding prospective borrowers. Its operation was facilitated by the employment of "brokers" throughout the United States who would seek out and refer to Trident persons with sufficient funds to pay the

* Honorable Hatfield Chilson, Senior District Judge, District of Colorado, sitting by designa-tion.

advance fee (one or two percent of the proposed loan), who also were in desperate need of large sums of money. In each case Trident intended to retain the advance fee without locating funding for the loan. Occasionally, an advance fee was returned to a victim apparently bent upon employing forceful self-help, but generally the advance fee was simply retained. Trident's scheme was uncovered by the infiltration of its operation by agents of the Federal Bureau of Investigation.

There is conflicting evidence as to the extent of Mr. Mangiameli's involvement in and knowledge of Trident's operation generally and the transaction involving the Kansas farmer specifically. It is upon this latter transaction alone that the indictment is based.

The government's evidence sufficiently shows that Mr. Mangiameli was fully aware of Trident's criminal activities and that he personally engaged in stalling victims. While there is no evidence that he had personal contact with the Kansas farmer prior to the victim's arrival in New York, there is ample evidence that he participated directly, although behind the scenes, in inducing the victim to travel to New York in the continued execution and concealment of the scheme to defraud.

Mr. Mangiameli's evidence, which the jury rejected by its verdict, tends to support his theory that he was entirely unaware of Trident's illegal activities and that he had no involvement in stalling the Kansas farmer or otherwise inducing him to travel to New York. Since the evidence is in conflict, its resolution was for the jury, not this court. *United States v. Gibbons*, 607 F.2d 1320, 1329 (10th Cir. 1979); *United States v. Brinklow*, 560 F.2d 1008, 1010 (10th Cir. 1977).

■ In our view, the evidence adduced at trial was sufficient to support the jury's verdict. Proof of personal contact between Mr. Mangiameli and the victim prior to the latter's trip to New York is not necessary to a conviction on the count charged. On this record the jury could believe that Mr. Mangiameli assisted in defrauding the Kansas farmer, and that is all that is required to support his conviction for aiding and abetting a violation of 18 U.S.C. § 2314.

Mr. Mangiameli next argues that the trial court erred in excluding portions of the proffered testimony of defense witness Frank Oliver. Mr. Oliver would have testified to specific instances of the untruthfulness under oath of prosecution witness Phil Kitzer, who had served as a consultant to Trident in the conduct of its illegal activities and was named along with Mr. Mangiameli in the indictment. Mr. Kitzer earlier had testified to the extensive involvement of Mr. Mangiameli in Trident's operations. Mr. Kitzer also had testified as a government witness in an earlier criminal prosecution of Mr. Oliver. Mr. Mangiameli's theory is that such evidence was relevant and admissible under Rule 404(b), Federal Rules of Evidence, as proof of Mr. Kitzer's motive or plan to testify falsely for the government in order to obtain convictions of his associates, and thereby gain some advantage in the disposition of his own case.

■ The trial court did permit Mr. Oliver to testify concerning Mr. Kitzer that "[a]mong people that are really familiar with his reputation, his reputation for truth and honesty and fair dealing are just bottom rung, could not be worse." Record, vol. 8, at 940. Mr. Oliver also testified that Mr. Kitzer had on occasion lied under oath and that, in the earlier trial, he had stated under oath his opinion that a witness testifying falsely but favorably to the government would not be charged with perjury. *Id.* at 936–37. The trial court, however, would not allow Mr. Oliver to relate specific examples of Mr. Kitzer's lying under oath. The court accepted Mr. Mangiameli's offer of proof and then ruled that the proffered evidence was calculated more to prove Mr. Kitzer's general character for veracity than to show motive or plan. Accordingly, the evidence should have been offered under Rule 404(a)(3) which permits the admission of evidence of the character of a witness subject, however, to the provisions of Rule 608. While Rule 608(a) permits reputation

and opinion evidence attacking the credibility of a witness, Rule 608(b) provides that specific instances of a witness' conduct, for the purpose of attacking his credibility, may not be proved by extrinsic evidence. Under Rule 608(b), Mr. Mangiameli properly might have inquired into specific instances of conduct to attack Mr. Kitzer's credibility upon cross-examination of Mr. Kitzer or any government witness who testified to Mr. Kitzer's character for truthfulness. Instead, he attempted to attack Mr. Kitzer's credibility by extrinsic evidence of conduct, which is forbidden by Rule 608(b).

■ In any event, the trial court, under Rule 403, may exclude otherwise admissible evidence after balancing its probative value against certain competing considerations set forth in the rule and concluding that the costs of the evidence outweigh its benefits. *United States v. Lowe*, 569 F.2d 1113, 1116 (10th Cir.), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978). The trial court specifically ruled "that any probative value of this evidence is substantially outweighed by the danger of confusing of the issues, introducing collateral issues, collateral to this trial, and leading to, of course, undue delay in the trial of these cases." Record, vol. 8, at 974. A trial court has broad discretion in applying Rule 403. *United States v. Lowe*, 569 F.2d at 1116. It is our view that this evidence would be inadmissible under either Rule 404(b) or Rule 404(a)(3), but that in any event Rule 403 permits the choice made by the trial court. We cannot say that its decision was an abuse of discretion. We hold that the evidence was properly excluded.

■ In his final argument on appeal, Mr. Mangiameli cites numerous allegedly improper statements made by government witnesses at trial concerning his character. Most of the challenged testimony relates to Mr. Mangiameli's knowledge of the entire scheme and was therefore relevant to prove his motive, knowledge, and intent as to the actions charged in the indictment. Rule 404(b) provides that otherwise inadmissible character evidence may be admissible to prove motive, opportunity, intent, prepara-

tion, plan, and knowledge. The evidence admitted in this case is of the very kind contemplated by the rule. *United States v. Jacobson*, 578 F.2d 863, 866 (10th Cir. 1978).

However, Mr. Mangiameli argues that even if this evidence was admissible to prove his knowledge of the scheme, its probative value was so substantially outweighed by its potential for prejudice that it should have been excluded under Rule 403. The trial court did not abuse its discretion in admitting this evidence. In addition, the trial court in its instructions carefully admonished the jury to consider evidence as to Mr. Mangiameli's character "only to the extent it might tend to prove motive, intent, plan, knowledge or absence of mistake." This limiting instruction ameliorated any potential for prejudice in the admission of this evidence. *See United States v. Jacobson*, 578 F.2d at 866.

Three other challenged references to Mr. Mangiameli characterized him as a hippie who took drugs, as an associate of prostitutes, and as a personal pimp to the founder of Trident Consortium.

■ Upon objection, the trial court immediately struck from the record the first reference and cautioned the jury:

Members of the jury, the statement by the witness in regard to the defendant, insinuating anything about drug use or anything like that, is stricken from your consideration. You are to disregard it. He is not on trial here for any drug problems.

Record, vol. 4, at 180. Mr. Mangiameli now objects to this cautionary instruction on the basis that it might have supported an inference by the jury that he did in fact have a drug problem. We do not think the instruction constitutes reversible error. The trial court has a duty to excise evidence of other uncharged wrongs and, in our view, the challenged instruction fairly discharged that duty. *United States v. Lucero*, 601 F.2d 1147, 1149 (10th Cir. 1979).

■ Two government witnesses testified that, in their presence, Mr. Mangiameli boasted to prostitutes about defrauding the

Kansas farmer. Although these gratuitous references to Mr. Mangiameli's association with prostitutes may not have been highly probative of the matters charged in the indictment, they occurred in the context of evidence that does address itself to the charges. The content of the conversations testified to was highly probative of Mr. Mangiameli's knowledge of the fraudulent scheme and was therefore admissible under Rule 404(b).

The challenged reference to Mr. Mangiameli as a personal pimp to Trident's founder was not specifically objected to at trial. Mr. Mangiameli apparently relied upon a standing objection, made earlier at the invitation of the court, to all evidence which Mr. Mangiameli believed should be excluded as improper character evidence under Rule 404(b), or as too prejudicial under Rule 403. The challenged reference occurred during testimony as to Mr. Mangiameli's duties at Trident. The remainder of that testimony concerned Mr. Mangiameli's involvement with certain illegal financial transactions at Trident and as such was highly probative of the matters set forth in the indictment. In our view, the reference to Mr. Mangiameli's procurement responsibilities was excisable and should have been stricken on the strength of the standing objection. However, viewing the evidence in context, we do not think its admission was reversible error. We do, however, caution that, in our view, the considerations bearing upon a decision whether to admit or exclude evidence under Rules 404(b) and 403 are sufficiently complex that ordinarily neither counsel nor the trial court should rely on a standing objection with respect to evidence coming within the purview of these rules.

AFFIRMED.