**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Isaac Lamont HOLT,
Defendant-Appellant.**

No. 85–2829.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 4, 1986.
Decided April 28, 1987.

John L. Gubbins, John L. Gubbins, Ltd., Chicago, Ill., for defendant-appellant.

Stephen C. Neal, Asst. U.S. Atty., Anton R. Valukas, U.S.Atty., U.S. Attorney's Office, Chicago, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge, and CUDAHY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Appellant, Isaac Lamont Holt, was indicted for conspiracy to rob a bank insured by the Federal Deposit Insurance Corporation, bank robbery, abetting the carrying of a firearm while robbing a bank, and the knowing possession of money stolen from a bank. He was found guilty on all of these counts and was sentenced to eight years incarceration. Appellant claims that the erroneous admission of several items of evidence and the misconduct of the prosecution denied him a fair trial. He further argues that there was insufficient evidence to support his conviction. We find appellant's contentions to be without merit. Therefore, we affirm the judgment of the district court.

**I**

On January 28, 1985, three men robbed the branch of the American National Bank at the corner of LaSalle Street and Wacker Drive in downtown Chicago. Approximately $24,000 was stolen. The three men escaped in a car that had been parked on Lower Wacker Drive and that was driven by a fourth man. Three men, Carlos Williams, Donald Sturges, and Steven Sturges, were arrested in connection with the robbery. Each of these three men entered a plea agreement with the government. They all identified Mr. Holt as the mastermind behind the robbery and as the driver of the getaway car. Eventually, charges were brought against Mr. Holt and he was brought to trial.

A. *The Government's Case*

More than thirty witnesses testified at Mr. Holt's trial. The government presented testimony from the other perpetrators, Carlos Williams, Donald Sturges, and Steven Sturges, regarding Mr. Holt's participation in the planning and execution of the robbery. The government also presented evidence regarding Mr. Holt's poor financial situation. Donald Sturges testified that Mr. Holt had written checks on his

father's account (Gumption Productions account) that he had to repay. A handwriting expert also testified that several checks payable to Mr. Holt on the Gumption Productions account were written in Mr. Holt's hand; his father's signature had been traced on them. Finally, the government presented evidence that the checks used by Mr. Holt were taken from the back of the checkbook in reverse order.

The government also called the security manager from the Westlake Community Hospital, who testified that Mr. Holt had previously worked as a security guard at the hospital. The security manager from the American National Bank testified that appellant had worked as a security guard for the Bank and had worked at the La-Salle and Wacker branch on several occasions. One of the Bank's tellers, Denise Ternoir, testified that appellant had been in the Bank about four days before the robbery. Finally, just prior to resting its case, the government presented a portion of appellant's grand jury testimony, in which appellant claimed that he had not been to the Bank for approximately one month prior to the robbery.

### B. *The Defense*

Mr. Holt offered testimony from a number of witnesses including several members of his family. Most of the issues raised by appellant stem from the government's cross-examination of the witnesses called by Mr. Holt. Mr. Holt's father testified that his son had permission to write checks on the Gumption Productions account. He also testified as to Mr. Holt's whereabouts on the day of the robbery. On cross-examination, he was asked whether he had tried to discourage appellant's wife from testifying before the grand jury. Gerri Franks, Mr. Holt's former girlfriend and Geraldine Baldwin Holt, his wife, also testified.

Mr. Holt also testified on his own behalf. He stated that Donald Sturges had approached him twice asking for information about the Bank's security systems, and that he tried to dissuade Donald Sturges from getting involved in any bank robbery scheme. Tr. at 1467–70. Furthermore, ap-

pellant claimed that, on the date that the others "cased" the Bank, he was at his mother's house for a family dinner. Tr. at 1479–80. Finally, Mr. Holt testified that, at the time the bank robbery occurred on January 28, he was working with his father. Tr. at 1486–87.

### C. *Rebuttal*

After Mr. Holt testified, the government called several witnesses to rebut his testimony. The government called a clerk from Westlake Community Hospital who testified that certain checks had been stolen from her file cabinet. It also called the security manager who testified about appellant's last day of work, which the government claims coincided with the theft of the checks. The government also recalled Denise Ternoir who testified that Mr. Holt had tried to pass a check at her teller window four days before the robbery. She described the check as being a business check from the suburbs, with a white background and either yellow or green on it. She also testified that the name of the payee had been altered. Tr. at 1688–89.

### D. *Appeal*

On this appeal, Mr. Holt raises several challenges to his convictions. First, he claims that the trial court abused its discretion by allowing the prosecution to introduce evidence of his misconduct that was unrelated to the charges made against him. He argues that the prosecution did so to show appellant's bad character. He argues that the danger of prejudice to him as a result of the admission of this evidence substantially outweighed the probative value of the evidence. Furthermore, Mr. Holt contends that the court should have given a limiting instruction with respect to this evidence. He also maintains that the government improperly put his character in issue with some of this "other wrongs" evidence. Second, Mr. Holt claims that he was denied a fair trial as a result of several instances of prosecutorial misconduct. Finally, Mr. Holt argues that there was insufficient evidence to support his convictions.

## II

### Prior Misconduct

Over appellant's objection, the following items of evidence were introduced at trial: 1) that checks were missing from Westlake Community Hospital, where appellant had worked as a security guard, and that appellant had tried to cash one of these checks at the Bank;[1] 2) that appellant had written unauthorized checks on the Gumption Productions account; 3) that appellant had signed his brother's name to a lease application; and 4) that appellant had signed and used checks that had been reported missing by his wife. Appellant argues that he suffered further prejudice because the prosecution emphasized this misconduct in its closing argument and because the trial court gave no limiting instruction regarding this evidence of misconduct. Appellant thus asks this court to review the evidentiary rulings of the district court. Such rulings are a matter left to the sound discretion of the trial court, and they are therefore accorded great deference. *United States v. Levy*, 741 F.2d 915, 924 (7th Cir.), *cert. denied*, 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 366 (1984). We shall only overrule such determinations upon a showing that the trial court has abused its discretion. *United States v. Johnson*, 805 F.2d 753, 759–60 (7th Cir.1986).

Appellant argues that the evidence of prior wrongdoing was improperly admitted under Fed.R.Evid. 403 and 404(b). Under Rule 403, evidence which is otherwise relevant is inadmissible if its probative value is substantially outweighed by its prejudicial effect. Rule 404(b) prohibits the introduction of evidence of specific wrongs committed by a defendant if the purpose for the introduction of such evidence is to show his propensity for wrongdoing. Under Rule 404(b):

> [a]dmission of evidence of prior or subsequent acts will be approved if (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue (i.e., such that 'the consequential fact may be inferred from the proffered evidence,' 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 404[8] at 404–49 (1982)), (3) the evidence is clear and convincing, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Liefer*, 778 F.2d 1236, 1242 (7th Cir.1985) (quoting *United States v. Shackleford*, 738 F.2d 776, 779 (7th Cir. 1984)). In determining whether the probative value of the evidence outweighs the possibility of prejudice, it is appropriate for the trial court to consider whether "[w]hen weighed with other available evidence, ... the evidence is reasonably necessary to meet the government's burden of proof beyond a reasonable doubt." *United States v. Kane*, 726 F.2d 344, 348 (7th Cir.1984). The burden of showing that the evidence meets these requirements falls upon the government. *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982).

### A. Westlake Community Hospital Checks

Mr. Holt's arguments with respect to the Westlake Community Hospital checks must be evaluated in light of the overall presentation of evidence in the case. It is important to note that, at the very beginning of trial, the district judge was aware of the

---

1. Appellant also argues that the government misled him into believing that it would not seek to get into this area. However, the transcript material cited to by appellant clearly indicates that the prosecutor was voicing his intention to avoid getting into Donald Sturges' arrest for trying to cash one of the stolen checks. There is no indication that the prosecutor intended these remarks to suggest that he intended to avoid inquiring into appellant's responsibility for the

missing checks. Appellant also cites to this court a passage from the transcript in which a prosecutor indicated that she did not intend to introduce evidence of appellant's other wrongs "at this point." Tr. at 661. This statement cannot be said to have led defense counsel to believe that the government did not intend to introduce *any* evidence of appellant's other wrongs during the *entire* trial.

possibility that such evidence would be tendered. The trial judge indicated "a fair amount of hesitation," tr. at 17, and deferred ruling in order to permit him to get "a better grasp ... as to where, if anyplace [sic], that really fit in as a relevant piece of evidence." *Id.*

During the defense's presentation of its case, Mr. Holt testified. His cross-examination was interrupted by a lengthy sidebar conference. The admissibility of testimony regarding the checks was discussed. The trial judge determined that the evidence concerning the checks was relevant to several issues—Mr. Holt's relationship with his alleged confederate, Donald Sturges, Mr. Holt's financial situation, when he had returned to the Bank and whether he had cashed a check there. The district judge specifically found that, with respect to this evidence, "[t]he relevancy and materiality overbears the possible prejudice...." Tr. at 1532. He further noted:

> As far as I am concerned, on the government's direct case, unless there is a pretty good reason for doing so, the government should not get into evidence which relates possibly other crimes. Once the defense comes in, and the defendant testifies, then the defendant is at that juncture just another witness. He is just another witness but also the defendant. Therefore, you want to take a good hard look at the possible prejudice.
>
> In that context, if on the basis of the defendant's testimony, he makes evidence of other matters particularly relevant, then that basically is his choice. He has to run the risk that in rebuttal of what he said, matters which were out of the government's direct case can come in.

Tr. at 1533–34.

The defendant then denied stealing the checks:

[Ms. De Maio:] Sir, you stole those cheks [sic] from the hospital, didn't you?

Mr. Kennon: Objection, Your Honor.

The Court: Overruled.

[Appellant:] I know nothing about any stolen checks. I read no reports about any stolen checks. No one came to me about stolen checks. I knew about stolen checks [sic].

Q. So I take it your answer is that you didn't steal them, is that right?

A. I didn't steal them, and I know nothing about stolen checks.

Q. Well you tried to cash one of those checks, didn't you sir?

A. Only through your people's words.

Q. Sir, my question was: Did you—

A. No, I did not try to cash a stolen check.

Q. Sir, isn't it a fact that in December you went up to Denise Ternoir in the American National bank, asked her to cash one of those stolen checks, and offered her money to do it?

A. No.

Tr. at 1614. In rebuttal, the government offered the testimony of a clerk from the hospital who testified that the checks had been discovered missing on the morning of December 10. It also offered the testimony of the hospital security director that Mr. Holt's last shift at the hospital had been the evening of December 10.[2] Ms. Ternoir, the bank teller—who had previously testified that Mr. Holt was in the Bank several days before the robbery—was then recalled and testified that the defendant had asked her to cash a business check from the suburbs with a white background and either yellow or green on it.

The record in this case reflects a careful, cautious approach to the admission of this evidence by the trial judge and a responsible, frank presentation by the prosecutor. The admissibility of evidence of appellant's prior wrongs was a question constantly before the court during this proceeding. The admissibility of the checks was carefully examined in a lengthy sidebar conference. The court specifically found the evidence probative of appellant's motive for robbing the Bank (i.e., his dire financial

---

**2.** The testimony of the Security Manager from Westlake Community Hospital indicates that the checks were stolen after appellant no longer worked there. The government claims that the witness confused the dates.

situation) and of his relationship with Donald Sturges (which appellant had downplayed in his earlier testimony). Tr. at 1532. As the court stated:

> On that one [the Westlake Hospital checks], I had originally said no as to the government's direct case. Given the defendant's testimony—well, it's really on several grounds.
>
> He has testified that Donald was the instigator of whatever was going on, that he was the person who was trying to get him to do things, but he wouldn't. The relationship was that Donald was the person who wanted things to happen in terms of the two of them, and he resisted, not just to the robbery but almost anything.
>
> He did have money problems and had gone into bankruptcy, but he certainly left a definite impression with the jury from his testimony that there was always, with a little budgeting, money available. While things were not good, they certainly weren't desperate.
>
> Here, I am thinking primarily of his testimony relating to the pawning of instruments and so forth. He certainly, regardless of what the questions were, left the impression that his returns to the banks had been minimal, certainly not one that included an effort to cash a check.
>
> I think in those circumstances that the government is entitled. The relevancy and materiality overbears the possible prejudice, and the government is entitled to put it in.

Tr. at 1532.

Later, the court stated:

> No. It's [relevant] on several grounds: on the whole scope of the testimony regarding his relationship with Donald; on his testimony regarding his money problems, how he did have money problems and did have the shorts and other financial problems that caused him to go into bankruptcy; how he did have a job three days a week and, if he just budgeted things, he did have money for one purpose or another; that pawning was more an inconvenience than anything else.

Tr. at 1534. And finally:

> I know. Certainly, in terms of the government's direct case, for all sorts of reasons, you exercise a lot of caution in saying, people, this is an area that we aren't going to get into. But once the defendant goes on the stand and testifies, if he, in effect, opens that up as a legitimate area of inquiry, then once you finish your direct with him, which you essentially did on Friday, then they are saying at that point: All right, Your Honor. We want the right to go into the area. We think it's now germane.
>
> I agree with them. You can't go back and say in that case, we are going to go back to a half-hour of direct.

Tr. at 1539–40. As evidenced by the portions of the transcript quoted above, the trial court conducted a careful balancing of the probative value and the possible prejudicial effect of the admission of the evidence regarding the theft of the Westlake Community Hospital checks. Admission of the evidence was important to the government's case. As we stated in *Kane*, "[t]he government is entitled to make as strong a case as possible to carry its burden of proof, subject to the court's discretion in balancing the necessity of the other crimes evidence to the government with its undue prejudice to the defendant." *Kane*, 726 F.2d at 348. In this case, the government had strong evidence, including testimony from the three men who had robbed the bank. However, appellant attempted to discredit their testimony. He also claimed that he tried to dissuade Donald Sturges from participating in a bank robbery, and that he was at a family function on the day of the robbery. Furthermore, as the district court noted, Mr. Holt's testimony gave rise to the inference that his money problems were not so desperate that they would have motivated him to rob a bank. We agree with the trial judge, that once appellant testified to this effect, evidence of appellant's prior wrongs, including his alleged theft of checks from the Westlake Community Hospital, became admissible to show Mr. Holt's motive for robbing the

bank, to show his relationship with Donald Sturges, and to impeach his earlier testimony. Thus, the evidence met the requirement of *Liefer* that the probative value of the evidence outweigh its prejudicial effect. 778 F.2d at 1242.

We find that the evidence also met the other *Liefer* requirements. The evidence that Mr. Holt stole the Westlake Community Hospital checks was clear and convincing. Although Mr. Holt focuses on the testimony of the security manager and the hospital clerk, the transcript of the trial shows that the government was prepared to offer testimony from Donald Sturges that he was arrested for trying to pass a check stolen from the Westlake Community Hospital. Furthermore, Mr. Sturges was prepared to testify that he had received the check from Mr. Holt. Although the testimony was never admitted into evidence, the judge was well aware of its availability, and it is the judge, rather than the jury, who determines whether evidence is clear and convincing as required by Rule 404(b). *See United States v. Byrd,* 771 F.2d 215, 222 & n. 4 (7th Cir.1985).

Further, the theft of checks was sufficiently similar to the offenses for which Mr. Holt was standing trial. Both involved illegal acts to obtain money. Also, the theft of the checks was close enough in time to be probative as to defendant's motive at the time of the bank robbery. Finally, the evidence was offered for purposes other than to show appellant's propensity to commit crimes. As the district judge noted, the evidence was admissible, and was admitted, because it was probative of appellant's motive, *see United States v. Feldman,* 788 F.2d 544, 556–57 (9th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987); *United States v. Poston,* 727 F.2d 734, 739–40 (8th Cir.), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984), of his relationship with Donald Sturges, *see United States v. McKoy,* 771 F.2d 1207, 1214–15 (9th Cir.1985), and for impeachment purposes, *see United States v. Qaoud,* 777 F.2d 1105, 1112 (6th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1499, 89 L.Ed.2d 899 (1986); *United States v. Covelli,* 738 F.2d 847, 856 (7th Cir.), *cert. denied,* 469 U.S. 867, 105 S.Ct. 211, 83 L.Ed.2d 141 (1984). Therefore, we hold that its admission was not an abuse of discretion.[3]

Mr. Holt also contends that the trial court should have excluded a portion of his grand jury testimony offered into evidence by the government. He argues that this evidence was offered to show he tried to pass one of the stolen checks at the Bank. We agree with the trial court that this testimony related to whether Mr. Holt was at the Bank during the week before the robbery. No reference was made to the stolen checks. Therefore, its admission raises no Rule 404(b) problem. At trial, the defense also argued that this evidence, if admissible, should be admitted during cross-examination of the defendant rather than during the government's case-in-chief. However, this issue was not raised on appeal. Therefore, it is not properly before this court. Nevertheless, if we were to face this question, and if we were to find the admission of this evidence to be error,[4] such error would be harmless. *See United States v. LeFevour,* 798 F.2d 977, 984 (7th Cir.1986).

### B. *Gumption Productions Account Checks*

Mr. Holt next argues that the district court should not have allowed the

---

**3.** Evidence offered to impeach the credibility of a witness generally may not be proven by extrinsic evidence. Fed.R.Evid. 608(b); *United States v. Kimberlin,* 805 F.2d 210, 235 (7th Cir. 1986), *petition for cert. filed* (Feb. 27, 1987). Thus, if the evidence were offered only for impeachment purposes, the government would not have been allowed to offer rebuttal testimony after Mr. Holt had denied that he stole the checks. *United States v. Mangiameli,* 668 F.2d 1172, 1175–76 (10th Cir.), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1776, 72 L.E.2d 179 (1982). However, because the evidence was admissible to

show motive under Rule 404(b), it was proper for the district court to allow proof by extrinsic evidence. *United States v. Smith Grading & Paving, Inc.,* 760 F.2d 527, 530–31 (4th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 524, 88 L.Ed.2d 457 (1985).

**4.** Apparently, the trial court admitted the grand jury testimony as an admission of a party opponent, Fed.R.Evid. 801(d)(2)(A). We have no occasion to consider the propriety of this ruling.

government to present testimony from a handwriting expert to show that certain checks drawn on the Gumption Productions account to Mr. Holt were written in Mr. Holt's hand and that his father's signature had been traced on them. Appellant argues that this evidence had little, if any, probative value because his father testified that appellant had the authority to write checks on the account. However, we find the government's position persuasive. First, it presented the handwriting expert's testimony as part of its case-in-chief. Therefore, it came before appellant's father's testimony. Furthermore, the government presented other evidence that showed that the checks in question had been used in reverse order starting from the back of the checkbook. Tr. at 1764–65. Appellant had also told Donald Sturges that he had taken money from his father's account that he had to repay. Tr. at 263. In view of these facts, the trial judge ruled that the probative value of this evidence outweighed its potential prejudicial effect and admitted the evidence. The transcript shows that the trial judge again made a careful consideration regarding the admission of this evidence:

> Given the prior testimony about your client saying he needed money to get it back in the account, the government is entitled to bring out evidence that he was instrumental in taking money out of the account.
>
> Now as to whether he had permission or not, that's another thing. They can certainly prove or attempt to prove that he took it out.

Tr. at 833.

This evidence was offered to show appellant's motive to commit the offenses for which he was being tried. *See Feldman,* 788 F.2d at 556–57. The evidence presented to show that he had wrongly taken

money from the Gumption Productions account was clear and convincing. Moreover, this act was close enough in nature and time to be probative of defendant's motive to commit the charged offenses. Finally, proof of defendant's motive to commit the crimes charged was important to the government's case because of the nature of appellant's defense; it helped establish his need for money.

### C. *Lease Application*

■ The government also elicited testimony from Geraldine Baldwin Holt, appellant's wife, that she had applied for an apartment lease with appellant and that, on that occasion, he had signed his brother Ivan's name to the application.

This evidence, received after careful consideration by the trial judge, tr. at 1343, also was properly admitted. First, it impeached Mrs. Holt's credibility. Prior to this line of questioning, she had testified that she would not lie to help her husband. Tr. at 1325–26; *see* Fed.R.Evid. 608(b); *Simmons, Inc. v. Pinkerton's, Inc.,* 762 F.2d 591, 603–05 (7th Cir.1985); *United States v. Varelli,* 407 F.2d 735, 751 (7th Cir.1969). Second, this evidence was relevant to appellant's motive; it further indicated his poor financial condition.[5]

### D. *Geraldine Baldwin Holt's Checking Account*

■ During the cross-examination of Geraldine Baldwin Holt, the appellant's wife, the prosecution asked about Mr. and Mrs. Holt's Christmas shopping in 1984. The defense objected to this line of questioning because it could have presented evidence of prior misconduct on the part of Mr. Holt. After this objection, the government agreed to limit its questions to *Mrs. Holt's* conduct,[6] which it did:

> not considered similar in nature to the crime charged, we have noted that, when the other crimes evidence is offered to prove motive, this requirement need not be satisfied. *United States v. Byrd,* 771 F.2d 215, 220 n. 1 (7th Cir.1985).

**5.** This evidence also meets the requirements of Rule 404(b). First, it was offered to show something other than appellant's bad character. Second, the evidence that appellant had signed his brother's name was clear and convincing. Third, its probative value outweighed its prejudicial effect. Fourth, it was, like the crime charged, a dishonest act to achieve financial gain. However, even if this "other wrong" is

**6.** The following exchange took place:

By Ms. De Maio:

Q. Mrs. Holt, did you go shopping for Christmas presents last December?

A. Yes.

Q. Did you go to Woodfield Mall?

A. No, I didn't.

Q. You never did?

A. I don't remember if I did.

Q. So it's possible that you did go to Woodfield Mall?

A. I doubt it.

Q. Is it possible you went to another mall to go shopping?

A. Yes.

Q. Did you in fact go to some mall, do you think, in December and went and did shoping [sic]?

A. I really don't know where I went shopping, because I went several places. I did a lot of shopping during Christmas.

Q. Well, did you make a report to the police department about the same time in December?

A. Yes, I did.

Q. Did you tell the police that your checks and purse had been stolen?

A. My purse was stolen.

Q. But you told the police that your checks had been stolen too, is that right?

A. Yes. My checks was in my purse.

Q. But, ma'am, isn't it a fact that or did you buy things with checks drawn on your account that you had someone else sign?

A. Definitely not.

Mr. Kennon: Objection, Your Honor.

The Court: Overruled.

By Ms. De Maio:

Q. You didn't have someone else sign your checks and then go in and make purse [sic] [purchases]?

A. No.

Q. And then tell the bank not to pay on your checks?

A. No, definitely not.

Q. So then if your husband had told that to someone, you wouldn't know why he would do that, is that right?

A. Right.

Tr. at 1333–34.

Although the jury could have inferred that appellant had signed the checks in question, it was free to infer that any other person, known or unknown to Mrs. Holt, had signed them. Regardless of who had signed the checks, the phrasing of the questions emphasized Mrs. Holt's actions and not the signer's. As the government notes (and as the district court noted, tr. at 1531), this evidence raised no question regarding other wrongs committed by appellant. It was probative of Mrs. Holt's credibility as a witness. Therefore, the admission of this evidence was governed by Fed. R.Evid. 608(b) rather than Rule 404(b). *See Simmons, Inc.,* 762 F.2d at 603–05; *Varelli,* 407 F.2d at 751. The testimony was properly considered and admitted by the trial court. We find no abuse of discretion.[7]

Mr. Kennon: Judge, on the other hand, on the other hand, now, since that is the basis, then prejudicial effect is much more profound than it is in the case where you are establishing the corpus delicti. Certainly there has been in fact a robbery, and everybody said and knows it and all that. The question is who did it? If there can be a prejudicial posture assumed by the questions rather than based on any kind of solid fact or foundation, then those kinds of innuendoes, Judge, against my client just based on trying to prove the credibility of a third person—

The Court: But the risks that the jury is going to convict on the basis of they think the defendant is a criminal type and, therefore, went out to rob the bank, it is just not that type of case. It gets down to a question of who they are going to ultimately believe, and in those circumstances I do think that both

sides, although I certainly will give the defense considerable latitude in going after some government witnesses, are entitled to take a pretty square shot at witnesses.

Mr. Kennon: I understand, but the prejudicial effect is so much different with respect to the—

Ms. De Maio: Your Honor, I will rephrase the rest of my questions without referring to it. I will just refer to her.

The Court: Okay.

Tr. at 1331–32.

7. Appellant also claims the government's cross-examination of Gerri Frank was improper because it referred to other wrongs committed by Mr. Holt. However, the transcript shows this argument to be meritless. Ms. Frank, appellant's former girlfriend, testified that appellant bragged to her about the number of packages in his car when they encountered one another

■ Mr. Holt also asserts that the government had no basis for asking his wife if she knew he had told someone that they had used checks that Mrs. Holt later reported stolen. Appellant's Br. at 13; *see, e.g., United States v. Sampol,* 636 F.2d 621, 658 (D.C.Cir.1980). This objection was raised at trial and the court rejected it. Tr. at 1326–29. Apparently, in a statement made to Agent Bohrer, Ms. Frank said that Mr. Holt had told her that he and his wife reported her purse (and checks) stolen after they had used improperly signed checks to buy Christmas presents. *Id.* The trial court held that this information provided the government with a good faith basis to question Mrs. Holt as to the checks. *Id.* The scope of cross-examination with respect to the credibility of a witness is a matter within the sound discretion of the trial judge. *United States v. Darwin,* 757 F.2d 1193, 1202 (11th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 106, 88 L.Ed.2d 86 (1985). Because the question was based on Ms. Frank's statement to Agent Bohrer, we hold that the trial judge did not abuse his discretion in permitting the question on the ground that the government had a good faith basis for the question. *See Sampol,* 636 F.2d at 658 ("A well reasoned suspicion that a circumstance is true is sufficient.").

### E. *Character*

■ Appellant's final evidentiary challenge is that the government improperly put appellant's character into issue by asking Gerri Frank if she had told an FBI Agent that she was not surprised to discover that appellant was suspected of be-

ing involved in a bank robbery. It should be noted that no objection was raised to this question. Tr. at 1227. Therefore, we must consider whether admission of this evidence amounted to plain error under Fed.R.Crim.P. 52(b), i.e., "whether it affects [Mr. Holt's] substantial rights." *United States v. Driver,* 798 F.2d 248, 253 (7th Cir.1986). Even if appellant did not waive his objection, the question was proper. During the defense counsel's direct examination, Ms. Frank had already testified that she had told the FBI Agent, "yeah, he probably did it." Tr. at 1169. However, she then recanted the statements she had made to the FBI Agent. Tr. at 1168–69. Ms. Frank explained that she was so upset by Agent Bohrer's news about Mr. Holt's engagement to another woman, that she agreed with everything that Agent Bohrer said. *Id.* It was perfectly appropriate for the government to then cross-examine her on this question and seek to rebut her testimony on cross-examination with testimony from the FBI Agent. The questioning related directly to Ms. Frank's credibility. Fed.R.Evid. 613.[8] It was not offered to show appellant's bad character. In any event, the admission of this evidence did not amount to plain error because, "[g]iven the amount of evidence of [Mr. Holt's] guilt," *see* Part IV *infra,* the admission of Gerri Frank's statement to Agent Bohrer "does not create risk of miscarriage of justice." *Driver,* 798 F.2d at 253.

Because we find no merit to any of appellant's evidentiary challenges,[9] we reject his claim that he was denied a fair trial be-

---

around Christmas of 1984 at the Woodfield Mall. The court did not allow the government to ask questions about whether appellant had said anything to her about any checks. Tr. at 1229.

**8.** Rule 613 of the Federal Rules of Evidence allows cross-examination of witnesses regarding prior inconsistent statements. The fact that the witness has tried to "explain away the contradiction by describing [her] uncommunicated state of mind in making one of the statements," does not deprive the prosecution of its right to introduce the contradictory statement. *United States v. Jackson,* 748 F.2d 1535, 1536–37 (11th Cir.1984). Furthermore, because Ms. Frank

had the opportunity to explain any prior inconsistencies between her testimony and her statement to Agent Bohrer, the government was entitled to offer proof of the prior inconsistent statement through Agent Bohrer's testimony. *See United States v. Lay,* 644 F.2d 1087, 1090 (5th Cir.), *cert. denied,* 454 U.S. 869, 102 S.Ct. 336, 70 L.Ed.2d 172 (1981).

**9.** Appellant also complains that the district court gave no limiting instruction regarding this evidence. However, no such instruction was requested. Tr. at 1867. The court, in the absence of a request for a limiting instruction, is not required to give one. *See United States v. Price,* 617 F.2d 455, 460 (7th Cir.1979).

cause of the erroneous admission of this evidence.

## III

### Prosecutorial Misconduct

■ Appellant also argues that his conviction was obtained through several instances of prosecutorial misconduct. He mentions specifically four such instances and charges that such techniques were used throughout the trial. Only those challenges specifically described are properly raised for appellate review. As stated by the court in *United States v. Buchbinder*, 796 F.2d 910 (7th Cir.1986):

> In evaluating claims of prosecutorial misconduct, "we are to consider the prosecutor's conduct not in isolation, but in the context of the trial as a whole, to determine if such conduct was 'so inflammatory and prejudicial to the defendant ... as to deprive him of a fair trial.'"

*Id.* at 919 (quoting *United States v. Howard*, 774 F.2d 838, 848 (7th Cir.1985)).

■ Appellant first claims that it was improper for the government to cross-examine Ms. Frank by asking her if Mr. Holt had had an affair with Ruth Herrera. The government submits that this question was asked simply to discredit Ms. Frank's testimony that she was so upset by the news (passed on by the FBI Agent) of appellant's engagement that she answered "yes" to every question posed by the agent. The trial transcript clearly supports the government's argument. The question was asked apparently in an attempt to show that Ms. Frank knew, well before she received the news of appellant's engagement, that he had become involved with another woman. It is clear that appellant "opened the door" to this line of questioning when defense counsel asked about Ms. Frank's reaction to the news of Mr. Holt's engagement. *United States v. Draiman*, 784 F.2d 248, 255 (7th Cir.1986). Thus, the government's question was properly asked to impeach Ms. Frank's testimony. Fed.R.Evid. 608(b); *Simmons, Inc.*, 762 F.2d at 603–05; *Varelli*, 407 F.2d at 751.

Appellant next argues that it was improper for the government to ask Ms. Frank whether she had asked Vicki Neal prior to testifying before the grand jury: "how many years I could get for perjury?" Tr. at 1237. Apparently, appellant argues that the government had no good faith basis for asking this question because it had laid no foundation for the question during Ms. Neal's testimony. However, Ms. Neal testified before Ms. Frank. At that point, there was no basis to discredit Ms. Frank's later testimony. Second, appellant did not object to this question. Tr. at 1237. Because no objection was made, the government had no occasion to present the basis for the question. Appellant cannot now complain that there was no basis. Any such objection should have been made when the question was asked. We hold that appellant has waived this objection. *See United States v. Miller*, 800 F.2d 129, 136 (7th Cir.1986); *United States v. Martel*, 792 F.2d 630, 636 (7th Cir.1986).

■ During her closing argument, the prosecutor commented that the interest that many of the defense witnesses had in the outcome of the case was demonstrated by the fact that they remained in the courtroom after giving their testimony. Appellant claims that this comment was improper because several of the government's witnesses were incarcerated and therefore unable to remain in the courtroom after testifying. This argument must also fail. Other courts have noted that a prosecutor may comment on the possible interest a witness may have in testifying where such a comment is supported by evidence in the record. *See, e.g., United States v. Canales*, 744 F.2d 413, 426 (5th Cir.1984); *United States v. Keane*, 522 F.2d 534, 561 (7th Cir.1975), *cert. denied*, 424 U.S. 976, 96 S.Ct. 1481, 47 L.Ed.2d 746 (1976). Furthermore, the fact that the government's witnesses were not at liberty to remain in the courtroom because of their incarceration was noted by the prosecutor when this comment was made. Tr. at 1851–52. Therefore, even if the prosecutor's comment were error, it was not "'so inflammatory and prejudicial to the defendant ... as to deprive him of a fair trial.'" *Buchbin-*

*der,* 796 F.2d at 919 (quoting *Howard,* 774 F.2d at 848).[10]

■ Appellant next submits that the prosecutor's questioning of appellant's father was improper because the prosecutor asked if appellant's father had discouraged appellant's wife from testifying. Again, the transcript bears out the government's explanation. After appellant's father had testified regarding "the government's attitude" during an interview with the FBI Agent, the prosecutor indicated that he wanted to explore the father's attitude at that time. Appellant's counsel agreed to allow such questioning if he were allowed to explore, with appellant's father, the prosecutor's and the FBI Agent's attitudes at that time. Tr. at 1039. Because appellant agreed to this line of inquiry as a matter of strategy, we can hardly entertain an objection to it at this point.

■ Appellant's final argument in this area is that the government improperly suggested that Mrs. Holt's testimony had been fabricated. However, the fact that Mrs. Holt remembered very few details of the day of the robbery when she testified before the grand jury, and yet gave rather detailed testimony about the same day when she *later* testified at appellant's trial, certainly invited some comment. *See United States v. Craig,* 573 F.2d 455, 494 (7th Cir.1977), *cert. denied,* 439 U.S. 820, 99 S.Ct. 83, 58 L.Ed.2d 110 (1978).

Because we find that the prosecutor's conduct, taken " 'in the context of the trial as a whole,' " was not so " 'inflammatory and prejudicial to the defendant ... as to deprive him of a fair trial,' " *Buchbinder,* 796 F.2d at 919 (quoting *Howard,* 774 F.2d at 848), we reject Mr. Holt's claim that he deserves a new trial on these grounds.

**10.** The transcript reveals that the prosecutor also told the members of the jury that they "saw a parade of perjury," and that Mr. Holt's family and friends had "lied" for him. Tr. at 1852. Mr. Holt did not object to these comments at trial and he has not raised a specific objection regarding them on appeal. To the extent this claim may have been included in his general claim of prosecutorial misconduct, it must also fail. As the Second Circuit recently noted in

## IV

### Sufficiency

■ Appellant's final argument is that there was insufficient evidence to support a guilty verdict against him. He bases this argument on several inconsistencies in the testimony of his alleged cohorts. He argues that the government has failed to establish an agreement involving the defendant (to support the conviction on the conspiracy count) because the three men who pled guilty to the robbery and whose testimony was used against appellant (Donald and Steven Sturges and Carlos Williams) all gave different accounts regarding: 1) the color and model of the getaway car; 2) when and where the agreement was entered into; 3) when the Bank was "cased"; and 4) how appellant obtained the gun used in the robbery. *See* Appellant's Br. at 21–24.

As this court stated in *United States v. Gabriel,* 810 F.2d 627 (7th Cir.1987): "It is well-settled that in a challenge based on sufficiency of the evidence, we will affirm the conviction if 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.* at 633 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)); *see United States v. Percival,* 756 F.2d 600, 610 (7th Cir.1985); *see also Brandom v. United States,* 431 F.2d 1391, 1400 (7th Cir.1970) ("Only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict."), *cert. denied,* 400 U.S. 1022, 91 S.Ct. 586, 27 L.Ed.2d 634 (1971).

*United States v. Peterson,* 808 F.2d 969 (2d Cir. 1987): "Use of the words 'liar' and 'lie' to characterize disputed testimony when the witness's credibility is clearly in issue is ordinarily not improper unless such use is excessive or is likely to be inflammatory." *Id.* at 977 (citation omitted); *see also United States v. Chaimson,* 760 F.2d 798, 811 (7th Cir.1985). In this case, the comments were neither excessive nor inflammatory.

Given this standard of review, appellant's sufficiency argument must also fail. These inconsistencies are relatively minor and are more than overcome by the consistent evidence pointing to appellant's guilt. The testimony of each of the robbers paralleled the testimony of the others: 1) as to the role each man played in the robbery; 2) as to the layout of the Bank (including details that only a person who had worked at the Bank would know); and 3) as to the details of obtaining the gun used in the robbery.

Furthermore, there was ample evidence that appellant was far better off immediately after the robbery than he had been immediately before. The government presented evidence that appellant made various payments and deposits (amounting to more than $1700) immediately after the robbery. Tr. at 445–46; 680; 961, 1636–37; 1267.

Finally, telephone records tended to discredit appellant's alibi. Records showed that appellant called Donald Sturges rather often prior to the robbery and that the calls all but ceased afterward. Tr. at 861, 1581. They also showed that appellant called Donald Sturgess more often than Donald called him, a fact that directly contradicted appellant's description of their relationship. Tr. at 861–63, 1426–27, 1579, 1714. The telephone records also showed a call from appellant's fiancee's apartment to the apartment of her best friend, Russalena Butler, on the night that the robbers allegedly cased the Bank. Appellant claimed that he and his fiancee were at his parents' home the entire evening and that they left Donald Sturges alone at appellant's fiancee's apartment. However, Ms. Butler testified that she had never spoken with Donald Sturges over the telephone. Tr. at 1379–80.

Viewing this evidence in the light most favorable to the government, we are unable to conclude that no " 'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Gabriel,* 810 F.2d at 633 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

Therefore, we must reject appellant's claim that there was insufficient evidence to support his convictions.

### Conclusion

Because we find appellant's claims to be without merit, the judgment of the district court is affirmed.

AFFIRMED.