In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-2306

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ROBERT C. SEYMOUR,

*Defendant-Appellant*.

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 05-CR-156-S-01—**John C. Shabaz**, *Judge*.

———————

ARGUED DECEMBER 13, 2006—DECIDED JANUARY 8, 2007

———————

Before POSNER, MANION, and EVANS, *Circuit Judges*.

POSNER, *Circuit Judge*.   A jury convicted the defendant of being a felon in possession of a gun, and the judge sentenced him to 120 months in prison. The only question presented by the appeal is whether the judge violated Rule 608(b) of the Federal Rules of Evidence by forbidding defense counsel, in cross-examining an officer of the Madison police department who was the government's principal witness, to inquire about a report the officer had made in another case.

According to his testimony, he had pulled in behind a car reported stolen, and out popped the front-seat passen-

ger and ran off. The driver—the defendant—then got out and stood by the car. He was wearing a sweatshirt with what the officer thought a suspicious bulge, perhaps a gun in his waistband, and so the officer drew his own gun and ordered the defendant to get back into the car. Instead the defendant took off running. The officer gave chase and caught up with the defendant and tackled him and in the melee the sweatshirt came off. The chase continued and eventually the officer caught his quarry. As the pair were walking back to the police car they passed the sweatshirt lying on the ground and the officer picked it up and underneath was a revolver. A friend of the defendant's girlfriend testified that she had seen a person run up to the sweatshirt while it was lying on the ground after the defendant had dropped it and place an object under it. The car's other occupants were never found.

Rule 608(b) provides that "specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, . . . may . . . , in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination." Three weeks before he arrested the defendant, the officer had had an encounter with a jaywalker who was blocking traffic. The jaywalker had "made an obscene gesture using his middle finger" and kept on walking. The officer had grabbed him from behind and "pushed him against the wall of the building" abutting the sidewalk. The jaywalker's "head struck the wall and he suffered a concussion." Our quotations are from the report of the police department's investigation of the incident. The department concluded that the officer had used excessive force, and suspended him for eight days without pay.

The fact that the officer had used excessive force in another case was a "specific instance . . . of the conduct of a witness," but it was not probative of his truthfulness. *Varhol v. National R.R. Passenger Corp.*, 909 F.2d 1557, 1567 (7th Cir. 1990); *United States v. Davis*, 183 F.3d 231, 256-57 (3d Cir. 1999). What was, according to the defendant, was the omission from the officer's police report of any reference to the use of force against the jaywalker. All that his report had said was that the jaywalker was obstructing traffic (there was a lot of traffic because "it was just after the completion of a Badger football home-game") and that when the officer driving the police car "gave [the jaywalker] the horn," the jaywalker "gave us the finger, said 'Fuck off,' and still blocked traffic. He was stopped, cuffed [a word in parentheses after cuffed is illegible], ID'd, and put into the back of our squad [car], where we then transported him to [another illegible word], subsequently citing and releasing him. He was heavily intoxicated but not incapacitated." No mention of slamming him against a wall and causing a concussion. The defendant argues that the omission was misleading and therefore tantamount to a lie and so was probative of the truthfulness of the officer's testimony against him.

The district judge didn't see how the police report related to the officer's truthfulness. The judge said "there is nothing in this determination [he is referring to the report of the police investigation that resulted in the eight-day suspension] which would suggest anything about dishonesty or deceit or perjury or any like issues . . . . This is excessive force in which the officer was punished for it and he also failed to fill out his dance card. He left off a few items." That is not correct. An omission can be as dishonest as an outright lie. The test is whether what is omitted is something the intended reader would have

expected to see included if it had occurred and so infers from its not being mentioned that it did not occur. *Midwest Commerce Banking Co. v. Elkhart City Centre*, 4 F.3d 521, 524 (7th Cir. 1993), and cases cited there. By this test, the omission from the officer's report of his use of force against a jaywalker, causing a concussion, was material because the Madison police department expects—indeed requires—the officer's report of an arrest to mention any use of force. "It is the responsibility of any officer who uses physical force . . . to complete an original or supplementary report on the incident involved, and to specifically note the circumstances necessitating and manner of such use . . . [of] physical force (e.g., striking, punching, pushing or restraining any person)." Madison Police Dep't Policy No. 6-200 (n.d.). For should the force used be excessive (or even just contended to be excessive), the police department could be in legal trouble, e.g., *City of Canton v. Harris*, 489 U.S. 378 (1989) (plurality opinion); *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999), as well as suffer adverse publicity; a prosecution might be spoiled; other untoward consequences might ensue. So the officer was being dishonest in omitting mention of his use of force, even though he was not punished for that. The government's argument that the omission was a mere "oversight," an "administrative error," is not persuasive.

The judge went on to say, however, that in any event the use of the report in cross-examination would "confuse the jury and it's more prejudicial than probative under [Rule] 403, and that's the reason the Court is not allowing this to go to the jury." Rule 608(b) is explicit that the determination of whether to allow specific instances of conduct to be used to challenge a witness's reputation for truthfulness is committed to the discretion of the

district judge, and Rule 403 establishes the standard for the exercise of the judge's discretion in evidentiary matters, which of course includes cross-examination. A jury would be more likely to give weight to the fact that the officer testifying against the defendant had recently used excessive force against a minor lawbreaker than to the fact that the officer's report had failed to mention the use of force. Yet the use of excessive force was irrelevant because there was no suggestion that the officer had used excessive force against the defendant.

The most compelling reason for keeping the incident from the jury, however, is that it had no probative value at all, because the officer's credibility was not in issue. The defendant did not deny that the officer had found a gun under his sweatshirt or contend that the officer had planted the gun there; his argument and evidence were that someone else had planted it. He did not contest the officer's testimony that officer and defendant returned to the site of the sweatshirt only about 90 seconds after the defendant had shed it, or argue that his divestment of the sweatshirt or the discovery and seizure of the gun constituted, or were the fruit of, an illegal search or seizure. There can be no doubt that the officer was entitled, upon seeing the defendant get out of a car that had been reported stolen, to approach him to ask questions—indeed a police officer doesn't need even bare suspicion simply to approach a person and ask a question of him, *Florida v. Royer*, 460 U.S. 491, 497 (1983); *United States v. Childs*, 277 F.3d 947, 950 (7th Cir. 2002) (en banc)—and to chase him when he ran away at the officer's approach and to seek to subdue him when he resisted being stopped, and then search him, including his clothes, including the abandoned sweatshirt. It could not have made a difference to a ra-

tional jury's verdict that the officer had behaved untruth-fully on another occasion.

                                                    AFFIRMED.

A true Copy:

     Teste:

                 _____
                 *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*