In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2498

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

YULIA YUREVNA ABAIR,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:12-cr-076 — **Jon E. DeGuilio**, *Judge.*

ARGUED DECEMBER 9, 2013 — DECIDED MARCH 19, 2014

Before WILLIAMS, SYKES, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Two weeks before she was
planning to close on the purchase of a new home in Indiana,
appellant Yulia Abair learned that her bank in Russia would
not wire the purchase price from her account. She managed to
secure the money before the closing by withdrawing a few
hundred dollars at a time from ATMs up to her maximum
daily limit and depositing the cash at her bank in Indiana. She
was charged with violating a federal criminal statute that

prohibits structuring currency transactions in order to evade federal reporting requirements for transactions involving more than $10,000 in currency. 31 U.S.C. § 5324(a)(3). Abair was convicted in a jury trial. She also agreed to sell her new home and to forfeit the entire proceeds to the government. She argues on appeal that the trial court erroneously applied Federal Rule of Evidence 608(b) by allowing the prosecutor to cross-examine her at length about alleged false statements on a tax return and student financial aid applications. We find that the government lacked a good faith basis for believing that Abair lied on the tax and financial aid forms and therefore conclude that the district court erred by allowing the prosecutor to ask a series of accusatory and prejudicial questions about them under Rule 608(b). We cannot say that the error was harmless in a trial that hinged on Abair's credibility. We reverse Abair's conviction and remand for a new trial. Abair also challenges the forfeiture of the entire proceeds of her home sale as an unconstitutionally excessive fine. We offer some guidance on that issue in case it arises again after remand.

I.   *Factual Background*

Abair emigrated to the United States from Russia in 2005 and married an American citizen. They lived together in Indiana, where Abair ran a massage therapy business and worked toward her nursing degree. During this time, Abair still owned her old apartment in Moscow. After being divorced, Abair sold the apartment in 2010 and deposited the proceeds in her account with Citibank Moscow. The next year, she signed a contract to buy a home for cash in South Bend, Indiana. That agreement set the closing for June 3, 2011.

Several weeks after signing the contract, Abair asked Citibank Moscow to transfer the purchase price from her account. The bank refused, apparently because her local bank account was in her married name and the Citibank Moscow account used her maiden name. The only way to reach her money in time for the closing was by withdrawing it bit by bit from Citibank ATMs in Indiana. Abair did so over a frenetic two weeks in which she repeatedly withdrew the maximum daily amount of cash (this ceiling was set in rubles but hovered around $6400). Over the same period, Abair made eight deposits at her local bank in amounts ranging from $6400 to $9800—all below the $10,000 limit at which the currency reporting requirements kick in. See 31 U.S.C. § 5313(a); 31 C.F.R. § 1010.311. The last of these deposits was on Tuesday, May 31. Because it immediately followed the Memorial Day weekend, her deposit was posted alongside one she had made on Saturday, pushing her "daily" deposit over the $10,000 reporting threshold set by regulation. See 31 C.F.R. § 1010.313. The teller asked for her identification and filled out the required currency transaction report. We presume it was this report that led the government to investigate Abair.

The U.S. Attorney's Office decided Abair was worth prosecuting, and she was indicted by a grand jury on eight counts—later correctly merged into one—of structuring financial transactions for purposes of evading the reporting requirements. Abair went to trial. Because the parties stipulated that her local bank was a domestic financial institution, the only two elements the government had to prove were that Abair knew of the reporting requirements and that she had

structured her transactions for the purpose of evading those requirements.

During its case-in-chief, the government focused on Abair's pattern of withdrawals and deposits. It showed that on each day Abair went to the bank, she had more than $10,000 in her possession yet always deposited less than that amount. The government called two IRS agents who had interviewed Abair. They testified that during the interview, which was not recorded, Abair revealed her knowledge of the reporting rules. The agents also testified that Abair told them outright that she had wanted to avoid the reporting rules because "she thought the government would look at her as though she was part of an organization or something, is what she said."

For her part, Abair did not dispute that she was aware of the $10,000 limit by the time she spoke with the agents. But she said she learned about it only after making the deposits, when she asked a friend why she had been asked to show identification at the bank. Abair's version was that the agents asked her why she thought the requirements existed, and she "said probably of organization or something—something like this." (Abair had arrived in the United States speaking very little English, and she testified to continuing difficulties with complex or technical conversations.) She said her deposit amounts were based on how much cash she had on hand at the time and how much would fit in her purse.

In cross-examining Abair, the prosecutor sought to ask about her 2008 joint income tax return and the Free Application for Federal Student Aid ("FAFSA") forms she filed while attending nursing school. Her attorney objected on relevance

grounds. In a sidebar conference, the prosecutor said he believed Abair misrepresented her business expenses on the tax return and lied on her student aid applications about her business income and her assets. He intended to ask about the filings to attack Abair's truthfulness under Federal Rule of Evidence 608(b), which allows cross-examination about specific instances of a witness's conduct if they are probative of character for truthfulness, but prohibits extrinsic evidence to prove such instances. Abair's attorney maintained his objection, arguing that the documents had no bearing on truthfulness. Abair's ex-husband had testified that he was the one who filled out the disputed expense information on their joint tax return, and the online FAFSA allowed Abair to skip questions about assets. The judge ruled that the filings were probative of Abair's truthfulness under Rule 608(b) and that the probative value of the evidence was not substantially outweighed by the danger of prejudice. See Fed. R. Evid. 403. The judge said the prosecutor was free to question Abair "in a very limited manner on these subjects," provided the questioning stopped at the point she denied lying on the forms.

Ask he did, though, repeatedly, and without stopping at the denials: "Isn't it true that you helped make prior statements—false statements—in submissions that related to financial matters; both on your tax returns and on your financial aid applications, you made false statements?" Abair denied this, but the questioning continued. Didn't the FAFSA form ask her to state her assets? No, not exactly. Didn't she recall being asked about her assets? No, the computer let her skip that part.

The questioning continued in the same vein. Wasn't it true she also lied about her income on the FAFSA forms? Didn't she lie on her taxes about her business's losses? Didn't she say expenses were double her gross receipts? Was she unaware that she gave her husband false numbers when he did their taxes? Abair denied having lied. She said she played almost no role in preparing her family's tax returns and never signed them. Her attorney raised multiple objections. But although the trial court reined in the questioning somewhat, the prosecutor had achieved what he set out to do.

The jury found Abair guilty on all counts. The court merged the eight counts into one, sentenced Abair to two years of probation, and ordered her to sell her new home and forfeit to the government all the proceeds of the sale, which amounted to $67,060.

II. *Analysis*

Abair argues that the district court abused its discretion in allowing the questions about her financial filings and claims the forfeiture was unconstitutionally excessive. Before dealing with those issues, though, we address briefly her argument that the original eight-count indictment was multiplicitous on the theory that her eight deposits together could support only one count of structuring. We have suggested as much before, *United States v. Davenport*, 929 F.2d 1169, 1171–72 (7th Cir. 1991), but the district judge corrected any problem on this score by merging the counts at sentencing. The judge did not do so earlier because defense counsel waited until mid-trial to challenge the indictment under Federal Rule of Criminal Procedure 29 rather than doing so in a Rule 12 pre-trial motion.

The delayed merger had no effect on Abair's sentence, and nothing suggests the number of counts contributed to the jury's verdict. The jury was instructed to consider the counts separately, and a rational jury could have found Abair guilty of each one based on the IRS agents' testimony and the record of Abair's transactions if it did not believe her testimony. We turn now to the principal issue on appeal.

A. *Cross-Examination Under Rule 608(b)*

Federal Rule of Evidence 608(b) limits the use of specific examples of a witness's prior conduct to support or undermine the witness's credibility. The rule bars extrinsic evidence of prior conduct but gives trial judges discretion to allow counsel to ask about it on cross-examination. Because "the possibilities of abuse are substantial," however, the conduct must be sufficiently relevant to truthfulness before it can be the subject of cross-examination. Fed. R. Evid. 608(b) Advisory Committee Note for 1972. What questions are allowed remains subject to "the overriding protection of Rule 403," which requires that their "probative value not be outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury … ." *Id.*; see also *United States v. Seymour*, 472 F.3d 969, 971 (7th Cir. 2007) ("Rule 403 establishes the standard for the exercise of the judge's discretion in evidentiary matters, which of course includes cross-examination" under Rule 608(b)); *United States v. Saunders*, 166 F.3d 907, 920 (7th Cir. 1999) ("district court judges retain wide latitude to impose reasonable limitations on cross-examination based on concerns about harassment, prejudice, confusion of the issues or interrogation that is only marginally relevant").

In this case we conclude that the district court abused its discretion by allowing the cross-examination on Abair's financial filings because the government did not provide a sufficient basis to believe the filings were probative of Abair's character for truthfulness. Rule 608(b) requires that the cross-examiner have reason to believe the witness actually engaged in conduct that is relevant to her character for truthfulness. See *United States v. Miles*, 207 F.3d 988, 994 (7th Cir. 2000) (affirming court's refusal to allow attorney to cross-examine government witness about failure to register firearm; conduct violated local ordinance but was irrelevant to truthfulness); *United States v. DeGeratto*, 876 F.2d 576, 584 (7th Cir. 1989) (questioning was improper under Rule 608(b) because government lacked sufficient evidence "to permit a good faith belief that DeGeratto knowingly helped the prostitution operation"); 1 McCormick on Evidence § 41 (Kenneth S. Broun ed., 7th ed. 2013) ("the cross-examiner must have a good faith basis in fact for the inquiry" under Rule 608(b)); 4 Jack B. Weinstein and Margaret A. Berger, Weinstein's Federal Evidence, § 608.22[2][a] (Joseph M. McLaughlin ed., 2d ed. 2013). In this case, there simply was no reason—at least, none that the government has offered—to believe the filings had any material bearing on Abair's truthfulness. As we have explained, "a prosecutorial hunch" that the defendant engaged in dishonesty is not enough. *DeGeratto*, 876 F.2d at 583; see generally *United States v. Benabe*, 436 F. App'x 639, 655 (7th Cir. 2011) (unpublished) ("A prosecutor's questions on cross-examination must be based on more than the prosecutor's own suspicions."); *United States v. Elizondo*, 920 F.2d 1308, 1313 (7th Cir. 1990) (same).

As a general matter, lying on financial documents such as tax returns or financial aid applications would seem to be an archetype of conduct bearing on truthfulness. See *United States v. Lynch*, 699 F.2d 839, 845 (7th Cir. 1982) (per curiam); *United States v. Sullivan*, 803 F.2d 87, 90–91 (3d Cir. 1986); but see *United States v. Dennis*, 625 F.2d 782, 798 (8th Cir. 1980) ("civil tax problems cannot be regarded as indicating a lack of truthfulness under this standard"). The problem here, however, is that the government did not demonstrate a sufficient reason to believe Abair herself actually lied. As her attorney explained at trial, and as Abair testified, the online FAFSA allowed her to skip questions about her assets that were irrelevant to her application. See, *e.g.*, U.S. Dep't of Ed., 2010–2011 FAFSA on the Web Worksheet, available at http://ifap.ed.gov/eannouncements/attachments/FOTWWorkshEn1011.pdf (last visited March 19, 2014).

The government acknowledged at sentencing that Abair could skip these questions, but it claimed she had nevertheless affirmatively reported having no assets. The government failed to explain why Abair would have done this, and the Department of Education printout on which the government relies is not enough to support its position. The printout shows a list of zeros next to items relating to the applicant's assets, but that does not mean Abair actually entered those figures. The printout is an internal department record, and the government has provided no reason to think that such zeroes and similar answers reflect verbatim what an applicant typed on her form. (For example, Abair probably did not write "Not Been Selected For Random Verification" or enter "0" for her date of high school graduation.) The government has not pointed to

anything in the record supporting its theory in the face of Abair's testimony and other indications that she simply exercised her option to skip inapplicable questions about her assets. Without more, the government failed to establish a good faith basis to believe that Abair's conduct in filling out the forms was relevant to her character for truthfulness.

The government also lacked sufficient basis for believing Abair intentionally lied on her and her then-husband's joint income tax return for 2008. The return listed $8,872 in vehicle expenses stemming from her massage business, a figure large enough to shift the business into the red. Abair acknowledged having provided her ex-husband most of the figures for her business, but he testified—in response to a question from the government—that he had calculated the vehicle numbers himself. In addition, the government never provided any reason for doubting Abair's testimony that she not only did not see the tax return but never even signed it because her husband filed it electronically.

Without more than the government has presented here, it has not established a good faith basis for attributing the vehicle figure to Abair or thinking it was the result of a deceitful act rather than an oversight. See *Miles*, 207 F.3d at 994 ("facts strongly indicate that Contant's failure to register his gun with the City was an oversight rather than a deceitful act which would bear on his truthfulness"); *United States v. Manske*, 186 F.3d 770, 775 (7th Cir. 1999) (reversing for new trial in part because of Rule 608(b) error; "closer inspection" into specifics of relevant conduct may be necessary to decide if it bears on witness's truthfulness). In the absence of a good faith basis for

asking Abair these accusatory questions at trial, it was an error for the court to allow the cross-examination.

The error was not harmless. We could hold the error harmless only if the government persuaded us that we could say "with fair assurance that the error did not substantially sway the jury." *Barber v. City of Chicago*, 725 F.3d 702, 715 (7th Cir. 2013). We find no such assurance here. The trial hinged on Abair's credibility. The jurors could reasonably have inferred knowledge and intent from her pattern of transactions; they also could have considered them an innocent series of daily deposits by someone scrambling to save her house purchase. They could have believed the IRS agents' account of Abair's confession; they could equally have viewed any supposed confession as the result of a misunderstanding stemming from Abair's nerves and/or her imperfect grasp of English. Against this backdrop, in a case alleging financial chicanery, the repeated accusations that Abair lied on her taxes and financial aid applications cannot be deemed harmless.

This conclusion becomes compelling when one considers the extent and accusatory nature of the cross-examination. The repetitive questions about Abair's FAFSA form, in particular, went far beyond simply identifying the specific conduct she was being asked about. The questioning recounted her various assets in such detail that the court worried aloud whether it was essentially "an attempt by the government to proffer her bad acts." See Weinstein, § 608.22[2][c][ii] (warning that cross-examiner's detailed questioning "can convey the theoretically barred information to the jury" and be so extensive "as to render the witness's denials completely suspect"), citing *United States v. Morales-Quinones*, 812 F.2d 604, 614 (10th Cir. 1987)

(affirming restrictions on excessive Rule 608(b) cross-examina-
tion of government witness), and *Watkins v. Foster*, 570 F.2d
501, 506 (4th Cir. 1978) (affirming grant of habeas corpus
petition where cross-examination to impeach defendant with
prior acts went too far), among other cases. While we need not
hold that the scope of the questioning itself was error under
Rule 403 or under Rule 611's bar on harassing or wasteful
questioning, see *United States v. Dawson*, 434 F.3d 956, 959 (7th
Cir. 2006) ("trial judge has a responsibility not to allow
cross-examination to get out of hand, confuse the jury, and
prolong the trial unnecessarily"), the cross-examination in this
case went on so long and in such detail as to dispel any
suggestion that the error was harmless. We note a few exam-
ples to illustrate.

At the beginning of the examination on the FAFSA forms,
the prosecutor used a vague and confusing compound (triple)
question to attack: "And on that form they ask you to state
your family income; they ask you to state how much you earn
from working and they ask you to state your assets; isn't that
true?" Abair answered (correctly) "Not exactly." That prompt-
ed the follow-up question: "Isn't it true that when you were
asked in the FAFSA application to state what your assets were,
to list them, to state the value of your assets—" which drew the
accurate objection that the question assumed facts not in
evidence, namely that Abair was actually asked those ques-
tions in the online form.

The prosecutor then restated his question: "Don't you
recall, ma'am, that you were asked what the value of your
assets were when you were filling out those FAFSA forms?"
Abair answered: "When I was filling this forms, they asked

questions how—about tax return—how much money you earn—and then it was giving me—it was saying—computer said that based on my answers I might skip question about my assets, and I did—I went to Mr. Stevens' [defense counsel] office and we—all screens was—I did the same thing. …"

Under Rule 608(b), the prosecutor should have been stuck with that denial. But he continued with the following highly improper compound question (at least twelve distinct factual assertions are built into it) that was just an accusatory speech: "In fact, you were asked what your assets were and you put in zero for the value of your assets in 2009, 2010, 2011. You did that in 2009 despite the fact that you owned a condominium and you held bank accounts and held assets in the United States. You did that in 2010 despite the fact that in the first part of 2010 you owned a condominium and in the second part of 2010 you had proceeds of more than $130,000. Isn't that correct?" (In addition to the compound question problem, which took things to an extreme, the confusing negative in the wrap-up, "Isn't that correct?" meant that a yes or no answer would have been ambiguous.) Defense counsel objected and the judge called a sidebar conference. The judge cautioned the prosecutor that he was "pushing the envelope" but did not take any corrective action, leaving the long and accusatory "question" hanging.

When questioning resumed, the prosecutor returned to the subject: "Isn't it true, ma'am, that you lied not only about not having any assets during those three years—." Defense counsel objected again, properly, for Abair had just denied having done so, but the prosecutor kept repeating the question. The judge was clearly attuned to the risk presented by this line of

questioning, but he did not take effective action by stopping or rebuking the prosecutor or telling the jury to disregard these improper and accusatory questions. The result was that the prosecutor had excessive latitude not to ask questions but to state and repeat accusations in a way unmistakably intended to plant the accusations in the jurors' minds. In this case, as we said in *DeGeratto*, "this cross-examination went much too far with too little." 876 F.2d at 584. The government lacked a good faith basis for this line of questioning under Rule 608(b), and the extent of its cross-examination makes clear that the error was not harmless.

B.  *Forfeiture*

Abair also challenges the forfeiture of her house's entire value, arguing that it is so disproportionate to the crime as to amount to an unconstitutionally excessive fine under the Eighth Amendment. The forfeiture was ordered pursuant to 31 U.S.C. § 5317(c)(1)(A), which provides in part that as part of a sentence for a violation of 31 U.S.C. § 5324, a court "shall order the defendant to forfeit all property, real or personal, involved in the offense and any property traceable thereto."

This statutory command is subject to the constitutional limit of the Eighth Amendment. *United States v. Bajakajian*, 524 U.S. 321, 337–39 (1998) (holding unconstitutionally excessive a similar forfeiture of currency that defendant was carrying out of U.S. without reporting, an offense not connected to other wrongdoing). In this appeal, the government has argued that Abair waived or forfeited her challenge to the amount of the forfeiture. Since we are remanding for a new trial on the merits, we need not resolve those procedural questions about

the forfeiture. But because the issue may arise again on remand, we offer the following general guidance.

Applying *Bajakajian*, an unconstitutionally excessive fine can be identified by looking to: (1) the nature of the defendant's crime and its connection to other criminal activity, (2) whether the criminal statute is principally meant to reach people like the defendant, (3) the maximum punishment that could have been imposed, and (4) the harm caused by defendant's conduct. *United States v. Malewicka*, 664 F.3d 1099, 1104 (7th Cir. 2011).

In *Bajakajian*, the Supreme Court held that $350,000 was an excessive punishment for the defendant's failure to report taking that amount of currency out of the country. We distinguished that case in *Malewicka*, affirming a $280,000 forfeiture for the same structuring offense Abair was charged with. *Malewicka* was a close case, however, and differed significantly from the facts here. Over the course of several years, defendant Malewicka withdrew millions of dollars from her business's bank account through hundreds of cash transactions just below the $10,000 limit. *Id.* at 1102. We upheld the forfeiture in large part based on the pervasiveness of the violations and the risk that a small-business owner in her position could structure transactions to facilitate tax evasion or other crimes. *Id.* at 1105–07.

*Malewicka* recognized a limit on the logic of *Bajakajian*: even a reporting offense can warrant a large forfeiture when the forfeiture amount is sufficiently related to the "quality and quantity" of the criminal conduct. *Id.* at 1104. Abair's prosecution involves the same criminal statute as did *Malewicka* but

otherwise bears little resemblance to that case. Abair was sentenced on one count to Malewicka's twenty-three. Abair made eight deposits over a week and a half, compared with Malewicka's hundreds of cash withdrawals over six years. Because Malewicka was an employer who operated her business with cash, there was a special risk of tax evasion or money laundering not present in Abair's case. There is no indication that Abair tried to avoid the reporting rules on other occasions or that her deposits were tied to any other criminal activity.

We recognize that the government believes that Abair may have been involved in a range of other wrongdoing, but there is simply no evidence of other wrongdoing. For all that appears in this record, Abair is at most a one-time offender who committed an unusually minor violation of the structuring statute not tied to other wrongdoing. We therefore have serious doubts that the forfeiture of her home's entire $67,000 value comports with the "principle of proportionality" that is the "touchstone of the constitutional inquiry under the Excessive Fines Clause," *Bajakajian*, 524 U.S. at 334, but further exploration of the issue can await a new trial.

Abair's conviction and sentence, including the forfeiture order, are REVERSED and the case is REMANDED to the district court for a new trial.

SYKES, *Circuit Judge*, dissenting. Yulia Abair, a Russian immigrant and registered nurse, made an unusual series of large cash deposits into her account at a bank near South Bend, Indiana. This attracted the attention of IRS agents and eventually the Department of Justice, but their investigation turned up no evidence of nefarious activity. Abair wasn't evading taxes or laundering ill-gotten gains; she was buying a home and was having difficulty accessing funds in her Citibank Moscow account. To get around the problem, Abair resorted to the scheme my colleagues have described: She made repeated ATM withdrawals from her Russian bank account and deposited the cash with her local bank in a series of transactions just under the $10,000 threshold that triggers the bank's reporting requirements for currency transactions. The withdrawals were legitimate, but the deposits landed Abair in big trouble.

The bank tellers told investigators that the money had a "musty," "mildewy," or "dirty" odor, as if it had been kept in a basement rather than freshly drawn from an ATM. Prosecutors inferred from the odd smell that the money must have come from an illegitimate source and brought the full force of the federal criminal law down on Abair. The U.S. Attorney's Office in South Bend indicted her on eight counts of structuring a money transaction to avoid currency reporting requirements. *See* 31 U.S.C. § 5324(a)(3). A jury convicted her on all counts. The prosecutor argued for a prison sentence, emphasizing the suspicious nature of the smelly money, but the district judge rejected the argument and placed Abair on probation. The prosecutor also sought a forfeiture of the entire amount at issue, which required Abair to sell her new home. For some

unknown reason, before trial Abair agreed not to fight the forfeiture if she was convicted. Based on the pretrial stipulation, the judge entered the requested forfeiture order, and Abair lost the full value of her home—about $67,000—to the government.

Abair raises four arguments on appeal: (1) the indictment was multiplicitous; (2) the district court committed an evidentiary error; (3) the evidence was insufficient to convict; and (4) the forfeiture was excessive in violation of the Eighth Amendment. Three of these arguments can be summarily rejected. The district court cured the multiplicity problem by merging the counts at sentencing. The evidence was sufficient to convict, even though the structuring violation was technical and not connected to any criminal activity. And because Abair stipulated to the forfeiture, she waived the Eighth Amendment challenge, which but for the waiver might have had substantial merit.

That leaves the claim of evidentiary error. My colleagues hold that the judge should not have permitted the prosecutor to cross-examine Abair about specific instances of conduct bearing on her truthfulness under Rule 608(b)(1) and that the error warrants a new trial. I disagree. But my different take on this case should not be understood as an endorsement of the government's decision to pursue Abair with every weapon in its arsenal. Perhaps there's a good (or at least adequate) explanation for so disproportionate a deployment of criminal-justice resources. On the present record, however, this case shows every sign of being an overzealous prosecution for a technical violation of a criminal regulatory statute—the kind of rigid and severe exercise of law-enforcement discretion that

would make Inspector Javert proud. Despite the prosecutorial overreaching, I find no legal error and so would affirm.

Rule 608(b)(1) permits a cross-examiner to attack the credibility of a witness by asking leading questions about specific instances of conduct "if they are probative of the [witness's] character for truthfulness or untruthfulness." FED. R. EVID. 608(b)(1). But the rule also prohibits the use of extrinsic evidence to prove the witness's character for truthfulness. So the cross-examiner is effectively bound by the witness's answer; if she denies the conduct or equivocates, the rule against admitting extrinsic evidence eliminates the opportunity to rebut. *See United States v. Bynum*, 3 F.3d 769, 772 (4th Cir. 1993) (explaining that under Rule 608(b)(1), the "cross-examiner may inquire into specific incidents of conduct, but does so at the peril of not being able to rebut the witness'[s] denials"); *see also United States v. Whitmore*, 359 F.3d 609, 618 (D.C. Cir. 2004).

As with other evidentiary questions, the trial judge has broad discretion to permit or exclude cross-examination under Rule 608(b)(1). Appellate review is deferential; we look only for an abuse of discretion. *United States v. Holt*, 486 F.3d 997, 1000–01 (7th Cir. 2007) ("We review the district court's decision to limit the scope of cross-examination [under Rule 608(b)] for an abuse of discretion."); *United State v. Dawson*, 434 F.3d 956, 959 (7th Cir. 2006) ("The important point is that the decision whether to allow a witness to be cross-examined [under Rule 608(b)] … is confided to the discretion of the trial judge … ."). What this means in practice is that close cases are resolved in favor of upholding the judge's exercise of discretion to control the admission of evidence at trial; reversal is

appropriate only if no reasonable judge would make the same decision. *See United States v. Chapman*, 692 F.3d 822, 827 (7th Cir. 2012); *United States v. Vargas*, 552 F.3d 550, 554 (7th Cir. 2008) ("Only where no reasonable person could take the view adopted by the trial court will we reverse an evidentiary ruling.").

Here, the judge allowed the government to cross-examine Abair about apparent falsehoods in her 2010–2012 FAFSA forms (federal financial-aid applications) and in her 2008 federal tax return. My colleagues conclude that this was an abuse of discretion because "the government did not demonstrate a sufficient reason to believe Abair herself actually lied" in these documents. Majority op. at 9. Respectfully, this conclusion sidesteps the applicable legal standard for Rule 608(b)(1) cross-examination and also the deferential standard of appellate review.

To cross-examine a witness under Rule 608(b)(1), the cross-examiner need only have a good-faith factual basis to support the proposed line of questioning. *See United States v. Holt*, 817 F.2d 1264, 1274 (7th Cir. 1987); *see also United States v. Skelton*, 514 F.3d 433, 444 (5th Cir. 2008); *Whitmore*, 359 F.3d at 622; *United States v. Cudlitz*, 72 F.3d 992, 1001 (1st Cir. 1996). That standard was met here. Copies of the relevant documents are in the record.[1] In each of Abair's three FAFSA forms—for financial-aid years 2010, 2011, and 2012—a zero appears on the line asking about her cash assets, and another zero appears on

---

[1] The documents were not offered or admitted as evidence before the jury, consistent with the bar on the use of extrinsic evidence to prove character for untruthfulness. *See* FED. R. EVID. 608(b)(1).

the line asking for the value of any investments. But other evidence in the case showed that during these years, Abair had substantial equity in her apartment in Russia, and after the property was sold, held a substantial sum of money—about $100,000—in her Citibank Moscow account. In addition, on her 2008 federal tax return, filed jointly with her husband, Abair claimed a business loss of $6,566 from her work as a massage therapist based in part on vehicle expenses totaling $8,872, a seemingly implausible figure given the nature of the business.

Abair's counsel vigorously objected to the government's proposed cross-examination. After a lengthy sidebar, the judge overruled the objection and permitted the cross-examination to proceed, concluding that the documentary evidence established a good-faith basis for the prosecutor to ask Abair whether she provided false information in these financial filings. But the judge reminded the prosecutor that he could not use extrinsic evidence; if Abair denied that she lied on the documents, the government would be stuck with her answer. The judge also warned the prosecutor to keep the scope of his inquiry narrow.

Cross-examination resumed but proceeded clumsily and was interrupted by several additional objections. Abair denied that she lied and offered a plausible explanation for how the misleading information wound up in these documents. She testified that the online program for the FAFSA permitted her to skip the questions about her assets based on other answers she gave earlier in the form. (Her counsel speculates that the program entered the zeroes automatically.) She also testified that her husband completed their 2008 tax return and filed it electronically. She acknowledged giving him financial informa-

tion about her massage business, but said that she neither saw nor signed the return before it was filed.

My colleagues credit Abair's explanation and conclude that the cross-examination lacked a good-faith factual basis and should have been excluded. Majority op. at 8–11. This reasoning misapplies the governing legal standard and overlooks the deference owed to a trial judge's evidentiary determinations.

The good-faith-basis standard for cross-examination under Rule 608(b)(1) is not a high bar; a "well[-]reasoned suspicion that a circumstance is true is sufficient." *Holt*, 817 F.2d at 1274 (quoting *United States v. Sampol*, 636 F.2d 621, 658 (D.C. Cir. 1980)). Importantly, although the inquiry into specific instances of conduct must have a basis in fact, the cross-examiner is not required to *prove* the underlying factual basis for his questions. *See Skelton*, 514 F.3d at 444.

It's true that the documentary evidence in this case gave rise to competing inferences, but one permissible interpretation was that Abair provided false information on these important financial filings. That's a sufficient factual basis for the Rule 608(b)(1) cross-examination. To be sure, Abair disputed the government's interpretation of the documentary evidence and provided a plausible explanation for how the misleading figures might have found their way into her FAFSA forms and tax return. My colleagues fault the government for "not point[ing] to anything in the record supporting its theory in the face of Abair's testimony and other indications that she simply exercised her option to skip inapplicable [FAFSA] questions about her assets." Majority op. at 9–10. They also criticize the government for not "provid[ing] any reason for doubting

Abair's testimony that she not only did not see the tax return but never even signed it because her husband filed it electronically." *Id.* at 10.

But this reasoning overlooks that the prosecutor did not have to *disprove* Abair's explanation before getting the green light to proceed with his cross-examination. All he needed to do was establish a good-faith factual basis to ask the questions; here, the documents themselves provided that good-faith basis. Nothing *required* the judge to credit Abair's proffered explanation when ruling on the defense attorney's objection. Even accepting the factual premise that the online FAFSA program permits applicants to skip certain questions and that Abair in fact did so, we can only speculate about whether the program fills in zeroes automatically or leaves the skipped questions blank. Abair's explanatory speculation may be plausible, but there's no evidence one way or another. Her FAFSA forms contain *both* blanks and zeroes. What we *do* know with some certainty is that nothing in the caselaw applying Rule 608(b) requires the cross-examiner to produce evidence to rebut the witness's explanation before gaining the judge's approval to cross-examine her on the subject. Nor was the government required to prove that Abair knowingly filed a false tax return as a precondition to cross-examining her about whether she inflated her claimed business expenses.

Simply put, the presence of a factual dispute about the specific instances of conduct does not defeat the cross-examiner's good-faith factual basis to proceed with the cross-examination under Rule 608(b)(1). A shaky factual foundation may be a factor in the judge's evaluation of the relative probative value and prejudicial effect of the cross-examination

under Rule 403. But to justify exclusion under Rule 403, the evidence must be *substantially* more prejudicial than probative. *See* FED. R. EVID. 403 (providing that "[t]he court may exclude relevant evidence if its probative value is substantially out-weighed by a danger of … unfair prejudice"). Here, the judge made a specific finding that the government's proposed cross-examination survived Rule 403 balancing.

That ruling was sound. The disputed issues at trial were Abair's knowledge of the $10,000 reporting limit and her intent to evade it. On the witness stand, she denied that she knew about the currency-transaction limit at the time of the offense and denied any intent to structure her transactions to evade it. Because her credibility was key, so was the government's Rule 608(b)(1) cross-examination.

As my colleagues have noted, providing false information on a financial-aid application or a tax return is "an archetype of conduct bearing on truthfulness." *Id.* at 11. So the government's proposed cross-examination was obviously highly probative. Of course, the prosecutor had to take the good with the bad; once the cross-examination was underway, he was stuck with Abair's denial and her plausible explanation for what appeared to be false information in her FAFSA forms and tax return. That she would deny lying and make an effort to explain the information did not require the judge to sustain the defense attorney's objection and disallow the cross-examination, either under Rule 608(b)(1) *or* Rule 403.

Finally, the court's holding fails to account for the deferential standard of review that applies to evidentiary determinations. Cross-examination under Rule 608(b)(1) always carries

the risk that the witness will deny the prior conduct or try to explain it away. Sometimes this happens in response to the cross-examiner's accusatory questions, and sometimes the witness is rehabilitated on redirect examination. Either way, the fact that the witness denies or plausibly explains the prior conduct isn't a basis for the reviewing court to find that the trial judge abused his discretion in allowing the cross-examination in the first place. The standard of review is deferential for good reason; the trial judge is in a superior position to evaluate evidentiary disputes and must rule on the basis of the information available at the time the objection is made. The abuse-of-discretion standard of review guards against appellate judges substituting their own views based on hindsight.

When confronted with Abair's objection, the trial judge's obligation was simply to test the prosecutor's good-faith factual basis for the proposed cross-examination. The judge did so here, conducting a proper inquiry under both Rule 608(b)(1) and Rule 403. The judge appropriately limited the scope of the cross-examination and closely monitored the prosecutor's questions. True, the prosecutor asked compound and confusing questions, but that doesn't call into question the judge's initial decision to overrule the defense attorney's objection and allow the cross-examination to proceed. Defense counsel interposed additional objections; some were sustained, some questions were cut off or left unanswered, and the material accusatory questions were met with denials and explanations from Abair.

In short, I can find no reason to fault the district judge's decision to permit this cross-examination or to criticize his

refereeing of it once it was underway. Finding no error, I would affirm, although not without serious misgivings about the wisdom of this prosecution. It's unclear to me how the interests of justice are served by saddling Abair with a felony conviction and forcing her to forfeit her home as punishment for a technical, trivial violation of the structuring statute. Without more, the government's suspicions about the mal-odorous money do not support an inference that broader criminality was at work here. Abair has no criminal history, and at sentencing the judge noted that she is otherwise a responsible person, has a good employment history, is an excellent mother to her 11-year-old son, and has substantial community support. No doubt these observations contributed to the judge's decision to place her on probation.

For the foregoing reasons, I respectfully dissent.[2]

---

[2] Despite our disagreement about the legal issue under Rule 608(b)(1), my colleagues' decision to reverse and remand for a new trial has the salutary effect of permitting a fresh exercise of prosecutorial discretion. The executive branch may choose to moderate its strict enforcement stance against Abair and resolve not to sink further resources into prosecuting her. Under the circumstances, that might be the most prudent and just thing to do.