HAMILTON, Circuit Judge.
Two weeks before she was planning to close on the purchase of a new home in Indiana, Yulia Abair learned that her bank in Russia would not wire the purchase price from her account. She managed to secure the money before the closing by withdrawing a few hundred dollars at a time from ATMs up to her maximum daily limit and depositing the cash at her bank in Indiana. She was charged with violating a federal criminal statute that prohibits structuring currency transactions in order to evade federal reporting requirements for transactions involving more than $10,000 in currency. 31 U.S.C. § 5324(a)(3). Abair was convicted in a jury trial. She also agreed to sell her new home and to forfeit the entire proceeds to the government. She argues on appeal that the trial court erroneously applied Federal Rule of Evidence 608(b) by allowing the prosecutor to cross-examine her at length about alleged false statements on a tax return and student financial aid applications. We find that the government lacked a good faith basis for believing that Abair lied on the tax and financial aid forms and therefore conclude that the district court erred by allowing the prosecutor to ask a series of accusatory and prejudicial questions about them under Rule 608(b). We cannot say that the error was harmless in a trial that hinged on Abair’s credibility. We reverse Abair’s conviction and remand for a new trial. Abair also challenges the forfeiture of the entire proceeds of her home sale as an unconstitutionally excessive fine. We offer some guidance on that issue in case it arises again after remand.
I. Factual Background
Abair emigrated to the United States from Russia in 2005 and married an American citizen. They lived together in Indiana, where Abair ran a massage therapy business and worked toward her nursing degree. During this time, Abair still owned her old apartment in Moscow. After being divorced, Abair sold the apartment in 2010 and deposited the proceeds in her account with Citibank Moscow. The next year, she signed a contract to buy a home for cash in South Bend, Indiana. That agreement set the closing for June 3, 2011.
Several weeks after signing the contract, Abair asked Citibank Moscow to transfer the purchase price from her account. The bank refused, apparently because her local bank account was in her married name and the Citibank Moscow account used her maiden name. The only way to reach her money in time for the closing was by withdrawing it bit by bit from Citibank ATMs in Indiana. Abair did so over a frenetic two weeks in which she repeatedly withdrew the maximum daily amount of cash (this ceiling was set in rubles but hovered around $6400). Over the same period, Abair made eight deposits at her local bank in amounts ranging from $6400 to $9800 — all below the $10,000 limit at which the currency reporting requirements kick in. See 31 U.S.C. § 5313(a); 31 C.F.R. § 1010.311. The last of these deposits was on Tuesday, May 31. Because it immediately followed the Memorial Day weekend, her deposit was posted alongside one she had made on Saturday, pushing her “daily” *262 deposit over the $10,000 reporting threshold set by regulation. See 31 C.F.R. § 1010.813. The teller asked for her identification and filled out the required currency transaction report. We presume it was this report that led the government to investigate Abair.
The U.S. Attorney’s Office decided Abair was worth prosecuting, and she was indicted by a grand jury on eight counts— later correctly merged into one — of structuring financial transactions for purposes of evading the reporting requirements. Abair went to trial. Because the parties stipulated that her local bank was a domestic financial institution, the only two elements the government had to prove were that Abair knew of the reporting requirements and that she had structured her transactions for the purpose of evading those requirements.
During its case-in-chief, the government focused on Abair’s pattern of withdrawals and deposits. It showed that on each day Abair went to the bank, she had more than $10,000 in her possession yet always deposited less than that amount. The government called two IRS agents who had interviewed Abair. They testified that during the interview, which was not recorded, Abair revealed her knowledge of the reporting rules. The agents also testified that Abair told them outright that she had wanted to avoid the reporting rules because “she thought the government would look at her as though she was part of an organization or something, is what she said.”
For her part, Abair did not dispute that she was aware of the $10,000 limit by the time she spoke with the agents. But she said she learned about it only after making the deposits, when she asked a friend why she had been asked to show identification at the bank. Abair’s version was that the agents asked her why she thought the requirements existed, and she “said probably of organization or something — something like this.” (Abair had arrived in the United States speaking very little English, and she testified to continuing difficulties with complex or technical conversations.) She said her deposit amounts were based on how much cash she had on hand at the time and how much would fit in her purse.
In cross-examining Abair, the prosecutor sought to ask about her 2008 joint income tax return and the Free Application for Federal Student Aid (“FAFSA”) forms she filed while attending nursing school. Her attorney objected on relevance grounds. In a sidebar conference, the prosecutor said he believed Abair misrepresented her business expenses on the tax return and lied on her student aid applications about her business income and her assets. He intended to ask about the filings to attack Abair’s truthfulness under Federal Rule of Evidence 608(b), which allows cross-examination about specific instances of a witness’s conduct if they are probative of character for truthfulness, but prohibits extrinsic evidence to prove such instances. Abair’s attorney maintained his objection, arguing that the documents had no bearing on truthfulness. Abair’s ex-husband had testified that he was the one who filled out the disputed expense information on their joint tax return, and the online FAFSA allowed Abair to skip questions about assets. The judge ruled that the filings were probative of Abair’s truthfulness under Rule 608(b) and that the probative value of the evidence was not substantially outweighed by the danger of prejudice. See Fed.R.Evid. 403. The judge said the prosecutor was free to question Abair “in a very limited manner on these subjects,” provided the questioning stopped at the point she denied lying on the forms.
*263 Ask he did, though, repeatedly, and without stopping at the denials: “Isn’t it true that you helped make prior statements — false statements — in submissions that related to financial matters; both on your tax returns and on your financial aid applications, you made false statements?” Abair denied this, but the questioning continued. Didn’t the FAFSA form ask her to state her assets? No, not exactly. Didn’t she recall being asked about her assets? No, the computer let her skip that part.
The questioning continued in the same vein. Wasn’t it true she also lied about her income on the FAFSA forms? Didn’t she lie on her taxes about her business’s losses? Didn’t she say expenses were double her gross receipts? Was she unaware that she gave her husband false numbers when he did their taxes? Abair denied having lied. She said she played almost no role in preparing her family’s tax returns and never signed them. Her attorney raised multiple objections. But although the trial court reined in the questioning somewhat, the prosecutor had achieved what he set out to do.
The jury found Abair guilty on all counts. The court merged the eight counts into one, sentenced Abair to two years of probation, and ordered her to sell her new home and forfeit to the government all the proceeds of the sale, which amounted to $67,060.
II. Analysis
Abair argues that the district court abused its discretion in allowing the questions about her financial filings and claims the forfeiture was unconstitutionally excessive. Before dealing with those issues, though, we address briefly her argument that the original eight-count indictment was multiplicitous on the theory that her eight deposits together could support only one count of structuring. We have suggested as much before, United States v. Davenport, 929 F.2d 1169, 1171-72 (7th Cir.1991), but the district judge corrected any problem on this score by merging the counts at sentencing. The judge did not do so earlier because defense counsel waited until mid-trial to challenge the indictment under Federal Rule of Criminal Procedure 29 rather than doing so in a Rule 12 pre-trial motion. The delayed merger had no effect on Abair’s sentence, and nothing suggests the number of counts contributed to the jury’s verdict. The jury was instructed to consider the counts separately, and a rational jury could have found Abair guilty of each one based on the IRS agents’ testimony and the record of Abair’s transactions if it did not believe her testimony. We turn now to the principal issue on appeal.
A. Cross-Examination Under Rule 608(b)
Federal Rule of Evidence 608(b) limits the use of specific examples of a witness’s prior conduct to support or undermine the witness’s credibility. The rule bars extrinsic evidence of prior conduct but gives trial judges discretion to allow counsel to ask about it on cross-examination. Because “the possibilities of abuse are substantial,” however, the conduct must be sufficiently relevant to truthfulness before it can be the subject of cross-examination. Fed. R.Evid. 608(b) Advisory Committee Note for 1972. What questions are allowed remains subject to “the overriding protection of Rule 403,” which requires that their “probative value not be outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury....” Id.; see also United States v. Seymour, 472 F.3d 969, 971 (7th Cir.2007) (“Rule 403 establishes the standard for the exercise of the judge’s discretion in evidentiary mat *264 ters, which of course includes cross-examination” under Rule 608(b)); United States v. Saunders, 166 F.3d 907, 920 (7th Cir. 1999) (“district court judges retain wide latitude to impose reasonable limitations on cross-examination based on concerns about harassment, prejudice, confusion of the issues or interrogation that is only marginally relevant”).
In this case we conclude that the district court abused its discretion by allowing the cross-examination on Abair’s financial filings because the government did not provide a sufficient basis to believe the filings were probative of Abair’s character for truthfulness. Rule 608(b) requires that the cross-examiner have reason to believe the witness actually engaged in conduct that is relevant to her character for truthfulness. See United States v. Miles, 207 F.3d 988, 994 (7th Cir.2000) (affirming court’s refusal to allow attorney to cross-examine government witness about failure to register firearm; conduct violated local ordinance but was irrelevant to truthfulness); United States v. DeGeratto, 876 F.2d 576, 584 (7th Cir.1989) (questioning was improper under Rule 608(b) because government lacked sufficient evidence “to permit a good faith belief that DeGeratto knowingly helped the prostitution operation”); 1 McCormick on Evidence § 41 (Kenneth S. Broun ed., 7th ed.2013) (“the cross-examiner must have a good faith basis in fact for the inquiry” under Rule 608(b)); 4 Jack B. Weinstein and Margaret A. Berger, Weinstein’s Federal Evidence, § 608.22[2][a] (Joseph M. McLaughlin ed., 2d ed.2013). In this case, there simply was no reason — at least, none that the government has offered — to believe the filings had any material bearing on Abair’s truthfulness. As we have explained, “a prosecutorial hunch” that the defendant engaged in dishonesty is not enough. DeGeratto, 876 F.2d at 583; see generally United States v. Benabe, 436 Fed.Appx. 639, 655 (7th Cir.2011) (unpublished) (“A prosecutor’s questions on cross-examination must be based on more than the prosecutor’s own suspicions.”); United States v. Elizondo, 920 F.2d 1308, 1313 (7th Cir.1990) (same).
As a general matter, lying on financial documents such as tax returns or financial aid applications would seem to be an archetype of conduct bearing on truthfulness. See United States v. Lynch, 699 F.2d 839, 845 (7th Cir.1982) (per curiam); United States v. Sullivan, 803 F.2d 87, 90-91 (3d Cir.1986); but see United States v. Dennis, 625 F.2d 782, 798 (8th Cir.1980) (“civil tax problems cannot be regarded as indicating a lack of truthfulness under this standard”). The problem here, however, is that the government did not demonstrate a sufficient reason to believe Abair herself actually lied. As her attorney explained at trial, and as Abair testified, the online FAFSA allowed her to skip questions about her assets that were irrelevant to her application. See, e.g., U.S. Dep’t of Ed., 2010-2011 FAFSA on the Web Worksheet, available at http://ifap.ed.gov/ eannouncements/attachments/ FOTWWorkshEnl011.pdf (last visited March 19, 2014).
The government acknowledged at sentencing that Abair could skip these questions, but it claimed she had nevertheless affirmatively reported having no assets. The government failed to explain why Abair would have done this, and the Department of Education printout on which the government relies is not enough to support its position. The printout shows a list of zeros next to items relating to the applicant’s assets, but that does not mean Abair actually entered those figures. The printout is an internal department record, and the government has provided no reason to think that such zeroes and similar *265 answers reflect verbatim what an applicant typed on her form. (For example, Abair probably did not write “Not Been Selected For Random Verification” or enter “0” for her date of high school graduation.) The government has not pointed to anything in the record supporting its theory in the face of Abair’s testimony and other indications that she simply exercised her option to skip inapplicable questions about her assets. Without more, the government failed to establish a good faith basis to believe that Abair’s conduct in filling out the forms was relevant to her character for truthfulness.
The government also lacked sufficient basis for believing Abair intentionally lied on her and her then-husband’s joint income tax return for 2008. The return listed $8,872 in vehicle expenses stemming from her massage business, a figure large enough to shift the business into the red. Abair acknowledged having provided her ex-husband most of the figures for her business, but he testified — in response to a question from the government — that he had calculated the vehicle numbers himself. In addition, the government never provided any reason for doubting Abair’s testimony that she not only did not see the tax return but never even signed it because her husband filed it electronically.
Without more than the government has presented here, it has not established a good faith basis for attributing the vehicle figure to Abair or thinking it was the result of a deceitful act rather than an oversight. See Miles, 207 F.3d at 994 (“facts strongly indicate that Contant’s failure to register his gun with the City was an oversight rather than a deceitful act which would bear on his truthfulness”); United States v. Manske, 186 F.3d 770, 775 (7th Cir.1999) (reversing for new trial in part because of Rule 608(b) error; “closer inspection” into specifics of relevant conduct may be necessary to decide if it bears on witness’s truthfulness). In the absence of a good faith basis for asking Abair these accusatory questions at trial, it was an error for the court to allow the cross-examination.
The error was not harmless. We could hold the error harmless only if the government persuaded us that we could say “with fair assurance that the error did not substantially sway the jury.” Barber v. City of Chicago, 725 F.3d 702, 715 (7th Cir.2013). We find no such assurance here. The trial hinged on Abair’s credibility. The jurors could reasonably have inferred knowledge and intent from her pattern of transactions; they also could have considered them an innocent series of daily deposits by someone scrambling to save her house purchase. They could have believed the IRS agents’ account of Abair’s confession; they could equally have viewed any supposed confession as the result of a misunderstanding stemming from Abair’s nerves and/or her imperfect grasp of English. Against this backdrop, in a case alleging financial chicanery, the repeated accusations that Abair lied on her taxes and financial aid applications cannot be deemed harmless.
This conclusion becomes compelling when one considers the extent and accusatory nature of the cross-examination. The repetitive questions about Abair’s FAFSA form, in particular, went far beyond simply identifying the specific conduct she was being asked about. The questioning recounted her various assets in such detail that the court worried aloud whether it was essentially “an attempt by the government to proffer her bad acts.” See Wein-stein, § 608.22[2][c][ii] (warning that cross-examiner’s detailed questioning “can convey the theoretically barred information to the jury” and be so extensive “as to render the witness’s denials completely suspect”), *266 citing United States v. Morales-Quinones, 812 F.2d 604, 614 (10th Cir.1987) (affirming restrictions on excessive Rule 608(b) cross-examination of government witness), and Watkins v. Foster, 570 F.2d 501, 506 (4th Cir.1978) (affirming grant of habeas corpus petition where cross-examination to impeach defendant with prior acts went too far), among other cases. While we need not hold that the scope of the questioning itself was error under Rule 403 or under Rule 611’s bar on harassing or wasteful questioning, see United States v. Dawson, 434 F.3d 956, 959 (7th Cir.2006) (“trial judge has a responsibility not to allow cross-examination to get out of hand, confuse the jury, and prolong the trial unnecessarily”), the cross-examination in this case went on so long and in such detail as to dispel any suggestion that the error was harmless. We note a few examples to illustrate.
At the beginning of the examination on the FAFSA forms, the prosecutor used a vague and confusing compound (triple) question to attack: “And on that form they ask you to state your family income; they ask you to state how much you earn from working and they ask you to state your assets; isn’t that true?” Abair answered (correctly) “Not exactly.” That prompted the follow-up question: “Isn’t it true that when you were asked in the FAFSA application to state what your assets were, to list them, to state the value of your assets — ” which drew the accurate objection that the question assumed facts not in evidence, namely that Abair was actually asked those questions in the online form.
The prosecutor then restated his question: “Don’t you recall, ma’am, that you were asked what the value of your assets were when you were filling out those FAF-SA forms?” Abair answered: “When I was filling this forms, they asked questions how — about tax return — how much money you earn — and then it was giving me — it was saying — computer said that based on my answers I might skip question about my assets, and I did — I went to Mr. Stevens’ [defense counsel] office and we — all screens was — I did the same thing.... ”
Under Rule 608(b), the prosecutor should have been stuck with that denial. But he continued with the following highly improper compound question (at least twelve distinct factual assertions are built into it) that was just an accusatory speech: “In fact, you were asked what your assets were and you put in zero for the value of your assets in 2009, 2010, 2011. You did that in 2009 despite the fact that you owned a condominium and you held bank accounts and held assets in the United States. You did that in 2010 despite the fact that in the first part of 2010 you owned a condominium and in the second part of 2010 you had proceeds of more than $130,000. Isn’t that correct?” (In addition to the compound question problem, which took things to an extreme, the confusing negative in the wrap-up, “Isn’t that correct?” meant that a yes or no answer would have been ambiguous.) Defense counsel objected and the judge called a sidebar conference. The judge cautioned the prosecutor that he was “pushing the envelope” but did not take any corrective action, leaving the long and accusatory “question” hanging.
When questioning resumed, the prosecutor returned to the subject: “Isn’t it true, ma’am, that you lied not only about not having any assets during those three years — .” Defense counsel objected again, properly, for Abair had just denied having done so, but the prosecutor kept repeating the question. The judge was clearly attuned to the risk presented by this line of questioning, but he did not take effective action by stopping or rebuking the prosecutor or telling the jury to disregard these *267 improper and accusatory questions. The result was that the prosecutor had excessive latitude not to ask questions but to state and repeat accusations in a way unmistakably intended to plant the accusations in the jurors’ minds. In this case, as we said in DeGeratto, “this cross-examination went much too far with too little.” 876 F.2d at 584. The government lacked a good faith basis for this line of questioning under Rule 608(b), and the extent of its cross-examination makes clear that the error was not harmless.
B. Forfeiture
Abair also challenges the forfeiture of her house’s entire value, arguing that it is so disproportionate to the crime as to amount to an unconstitutionally excessive fine under the Eighth Amendment. The forfeiture was ordered pursuant to 31 U.S.C. § 5317(c)(1)(A), which provides in part that as part of a sentence for a violation of 31 U.S.C. § 5324, a court “shall order the defendant to forfeit all property, real or personal, involved in the offense and any property traceable thereto.”
This statutory command is subject to the constitutional limit of the Eighth Amendment. United States v. Bajakaji-an, 524 U.S. 321, 337-39, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998) (holding unconstitutionally excessive a similar forfeiture of currency that defendant was carrying out of U.S. without reporting, an offense not connected to other wrongdoing). In this appeal, the government has argued that Abair waived or forfeited her challenge to the amount of the forfeiture. Since we are remanding for a new trial on the merits, we need not resolve those procedural questions about the forfeiture. But because the issue may arise again on remand, we offer the following general guidance.
Applying Bajakajian, an unconstitutionally excessive fíne can be identified by looking to: (1) the nature of the defendant’s crime and its connection to other criminal activity, (2) whether the criminal statute is principally meant to reach people like the defendant, (3) the maximum punishment that could have been imposed, and (4) the harm caused by defendant’s conduct. United States v. Malewicka, 664 F.3d 1099, 1104 (7th Cir.2011).
In Bajakajian, the Supreme Court held that $350,000 was an excessive punishment for the defendant’s failure to report taking that amount of currency out of the country. We distinguished that case in Malew-icka, affirming a $280,000 forfeiture for the same structuring offense Abair was charged with. Malewicka was a close case, however, and differed significantly from the facts here. Over the course of several years, defendant Malewicka withdrew millions of dollars from her business’s bank account through hundreds of cash transactions just below the $10,000 limit. Id. at 1102. We upheld the forfeiture in large part based on the pervasiveness of the violations and the risk that a small-business owner in her position could structure transactions to facilitate tax evasion or other crimes. Id. at 1105-07.
Malewicka recognized a limit on the logic of Bajakajian: even a reporting offense can warrant a large forfeiture when the forfeiture amount is sufficiently related to the “quality and quantity” of the criminal conduct. Id. at 1104. Abair’s prosecution involves the same criminal statute as did Malewicka but otherwise bears little resemblance to that case. Abair was sentenced on one count to Malewicka’s twenty-three. Abair made eight deposits over a week and a half, compared with Malewic-ka’s hundreds of cash withdrawals over six years. Because Malewicka was an employer who operated her business with cash, there was a special risk of tax evasion or money laundering not present in *268 Abair’s case. There is no indication that Abair tried to avoid the reporting rules on other occasions or that her deposits were tied to any other criminal activity.
We recognize that the government believes that Abair may have been involved in a range of other wrongdoing, but there is simply no evidence of other wrongdoing. For all that appears in this record, Abair is at most a one-time offender who committed an unusually minor violation of the structuring statute not tied to other wrongdoing. We therefore have serious doubts that the forfeiture of her home’s entire $67,000 value comports with the “principle of proportionality” that is the “touchstone of the constitutional inquiry under the Excessive Fines Clause,” Bajakajian, 524 U.S. at 334, 118 S.Ct. 2028, but further exploration of the issue can await a new trial.
Abair’s conviction and sentence, including the forfeiture order, are REVERSED and the case is REMANDED to the district court for a new trial.